IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TERRY L. SNYDER,                          )
                                          )
                    Plaintiff,            )
            v.                            )
                                          )    C.A. No. 04-970-JJF
CITISTEEL USA, INC.,                      )
                                          )
                    Defendant.            )

**DEFENDANT CITISTEEL USA INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Sheldon N. Sandler, Esquire (No. 245)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor, P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6673; (302) 571-5008
Facsimile: (302) 576-3330; (302) 576-3476
Email: ssandler@ycst.com; mdibianca@ycst.com
Attorneys for Defendant

DATED:        January 16, 2007

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iv

ARGUMENT ........................................................................................................... 1

I.    SNYDER FAILS TO ALLEGE ANY CONDUCT THAT COULD SATISFY THE
      SEVERE AND PERVASIVE REQUIREMENTS NECESSARY FOR AN
      ACTIONABLE HOSTILE ENVIRONMENT CLAIM ......................................... 1

      A.    Snyder's Thinly Veiled Attempt to Utilize Two Different Timelines
            Fails to Hide the Insufficiency of Her Claims ................................. 1

      B.    The Conduct Alleged by Snyder Is Not Objectively Severe or
            Pervasive ......................................................................................... 2

            1.    Even In the Light Most Favorable to Snyder, the Three
                  Incidents Involving Physical Contact Are Objectively
                  Insufficiently Severe to Constitute a Hostile Work
                  Environment ........................................................................ 2

            2.    The Non-Physical Conduct Alleged by Snyder Is
                  Objectively Insufficient ...................................................... 5

      C.    Snyder Was Not Subjectively Affected by the Alleged Conduct ................... 6

            1.    Snyder Was Not Physically Threatened or Intimidated by
                  Harris .................................................................................. 7

            2.    Snyder Admits that Her Work Performance Did Not
                  Suffer Due to Any Interference Caused by Harris .............................. 7

      D.    Snyder's Conclusory Allegations Serve Only to Discredit Snyder and
            Her Testimony and Render Such Allegations Unusable ................................ 8

II.   SNYDER CANNOT SHOW THAT CITISTEEL IS NOT ENTITLED TO THE
      PROTECTIONS OF THE ELLERTH-FARAGHER  DEFENSE ........................................ 9

      A.    CitiSteel Satisfied Its Duty to Take Reasonable Corrective Measures
            by Conducting a Proper Investigation ........................................................ 10

      B.    The Lateral Transfer Was An Effective and Appropriate Remedial
            Measure that Snyder Unreasonably Refused Without Even
            Considering ................................................................................. 12

      C.    Snyder Repeatedly and Unreasonably Failed to Participate in
            CitiSteel's Investigation .............................................................. 13

III.  SNYDER'S REFUSAL TO ACCEPT THE LATERAL TRANSFER PRECLUDES
      HER CONSTRUCTIVE DISCHARGE CLAIM AS A MATTER OF LAW ...................... 16

IV.    SNYDER'S REFUSAL TO ACCEPT THE LATERAL TRANSFER PRECLUDES
       HER RETALIATION CLAIM AS A MATTER OF LAW.................................................. 17

V.     SNYDER CANNOT ESTABLISH THE ELEMENTS REQUIRED FOR AN AWARD
       OF PUNITIVE DAMAGES OR FRONT OR BACK PAY .................................................. 18

CONCLUSION........................................................................................................................... 20

**TABLE OF AUTHORITIES**

*Andrews v. Phila.,*
   895 F.2d 1469 (3d Cir. 1990) ....................................................................... 6

*Arasteh v. MBNA Bank, N.A.,*
   146 F. Supp. 2d 476 (D. Del. 2001) .............................................................. 7

*Baskerville v. Culligan Int'l Co.,*
   50 F.3d 428 (7th Cir. 1995) ....................................................................... 6, 7

*Brenlla v. Lasorsa Buick Pontiac Chevrolet, Inc.,*
   No. 00-Civ.-5207, 2002 U.S. Dist. LEXIS 9358
   (S.D.N.Y. May 28, 2002) ............................................................................ 19

*Brown v. Perry,*
   184 F.3d 388 (4th Cir. 19999) ................................................................... 12

*Burlington Indus. v. Ellerth,*
   524 U.S. 742 (1998) ...................................................................................... 9

*Cardenas v. Massey,*
   269 F.3d 251 (3d Cir. 2001) ...................................................................... 14

*Caridad v. Metro-North Commuter R.R.,*
   191 F.3d 283 (2d Cir. 1999) ...................................................................... 14

*Carrasco v. Boeing Co.,*
   190 Fed. Appx. 650 (10th Cir. 2006) .......................................................... 6

*Clegg v. Falcon Plastics, Inc.,*
   174 Fed. Appx. 18 (3d Cir. 2006) ..................................................... 2, 14, 16

*Clowes v. Allegheny Hosp.,*
   991 F.2d 1159 (3d Cir. 1993) .................................................................... 16

*Cooper v. Wyeth Ayerst Lederle,*
   106 F. Supp. 2d 479 (S.D.N.Y. 2000) .............................................. 13, 16, 17

*Cooper-Nicholas v. City of Chester, Pa.,*
   No. 95-6493, 1997 U.S. Dist. LEXIS 20810
   (E.D. Pa. Dec. 30, 1997) .............................................................................. 4

*Crady v. Liberty Nat'l Bank & Trust Co.,*
   993 F.2d 132 (7th Cir. 1993) .................................................................... 17

*Dailey v. Societe Generale,*
   108 F.3d 451 (2d Cir. 1997) ...................................................................... 19

*Dayes v. Pace Univ.*,
  No. 98 Civ. 3675, 2000 U.S. Dist. LEXIS 3698 (S.D.N.Y. 2000),
  *aff'd* 2 Fed. Appx. 204  (2d Cir. 2001) ..................................................... 14

*Denton v. Boilermakers Local 29*,
  673 F. Supp. 37 (D. Mass. 1987)........................................................... 19

*DiCenso v. Cisneros*,
  96 F.3d 1004 (7th Cir. 1996)................................................................ 4

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1999).............................................................................. 6

*Finnerty v. Wm. H. Sadler, Inc.*,
  176 Fed. Appx. 158 (2d Cir. 2006)................................................12, 16

*Garone v. UPS*,
  436 F. Supp. 2d 448 (E.D.N.Y. 2006) ..............................................6, 14

*Goss v. Exxon Office Sys. Co.*,
  747 F.2d 885 (3d Cir. 1984)................................................................ 16

*Gray v. York Newspapers, Inc.*,
  957 F.2d 1070 (3d Cir. 1992) ............................................................. 13

*Harris v. City of Carrollton*,
  No. 3:01-CV-1249-M, 2002 U.S. Dist. LEXIS 21040
  (N.D. Tex. Oct. 30, 2002) ..................................................................... 8

*Harris v. Forklift Sys.*,
  510 U.S. 17 (1993)................................................................................. 3

*Harvill v. Westward Commun., LLC*,
  311 F. Supp. 2d 573 (E.D. Tex. 2004)............................................. 1, 8

*Hawkins v. 1115 Legal Serv. Care*,
  163 F.3d 684 (2d Cir. 1998)................................................................ 19

*Hostetler v. Quality Dining, Inc.*,
  218 F.3d 798 (7th Cir. 2000)........................................................... 3, 4

*Jones v. Fitzgerald*,
  285 F.3d 705 (8th Cir. 2002)............................................................... 17

*Knabe v. Boury Corp.*,
  114 F.3d 407 (3d Cir. 1997)................................................................ 11

*Kolstad v. Am. Dental Ass'n*,
  527 U.S. 526 (1999).............................................................................. 19

*Krizman v. AAA Mid-Atl., Inc.*,
  No. 06-402, 2006 U.S. Dist. LEXIS 74647
  (E.D. Pa. Oct. 12, 2006)..................................................................... 17

*Ledergerber v. Stangler*,
  122 F.3d 1142 (8th Cir. 1997)........................................................... 17

*Leopold v. Baccarat, Inc.*,
  239 F.3d 243 (2d Cir. 2001)............................................................... 14

*Lignore v. Hosp. of Univ. of Pa.*,
  No. 04-5735, 2006 U.S. Dist. LEXIS 43996,
  (E.D. Pa. June 27, 2006) ..............................................................1, 2, 4

*Mack v. Otis Elevator Co.*,
  326 F.3d 116 (2d Cir. 2003 )............................................................. 16

*Mackie v. U.S. Mfg., Inc.*,
  No. 03-85-LRR, 2005 U.S. Dist. LEXIS 17301
  (N.D. Iowa June 29, 2005) .................................................................. 6

*Marrero v. Goya of P.R.*,
  304 F.3d 7 (1st Cir. 2002) ................................................................. 18

*Matvia v. Bald Head Island Mgm't, Inc.*,
  259 F.3d 261 (4th Cir. 2001)............................................................. 14

*Maurizio v. Fox Chapel Foods, Inc.*,
  No. 02:04cv1168, 2006 U.S. Dist. LEXIS 62926
  (W.D. Pa. Sept. 5, 2006) .................................................................8, 18

*Miller v. Marsh*,
  766 F.2d 490 (11th Cir. 1985)........................................................... 19

*Morrison v. Carpenter Techn. Corp.*,
  No. 05-1922, 2006 U.S. App. LEXIS 21448
  (3d Cir. Aug. 22, 2006)...................................................................... 17

*Mosakowski v. PSS World Med., Inc.*,
  329 F. Supp. 2d 1112 (D. Az. 2003)..................................................... 2

*O'Dell v. Trans World Entmt. Corp.*,
  153 F. Supp. 2d 378 (S.D.N.Y. 2001),
  *aff'd* 40 Fed. Appx. 628 (2d Cir. 2002) ..........................................14, 16

*Penry v. Federal Home Loan Bank of Topeka*,
  155 F.3d 1257 (10th Cir. 1998) .......................................................... 5

*Phillips v. Collings*,
  256 F.3d 843 (8th Cir. 2001)............................................................. 18

*Podobnik v. U.S.P.S.*,
   409 F.3d 584 (3d Cir. 2004) ................................................................................... 8

*Powell v. United Ins.Co.*,
   No. 04C0829, 2006 U.S. Dist. LEXIS 40644
   (E.D. Wis. June 16, 2006) ...........................................................................3, 4, 6

*Shaw v. Autozone, Inc.*,
   180 F.3d 806 (7th Cir. 1999) ...................................................................................9, 15

*Shepherd v. Comptroller of Public Accounts*
   168 F.3d 871, 873 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999) ................................. 4

*Silver v. GM Corp.*,
   No. 99-2121, 2000 U.S. App. LEXIS 17752
   (4th Cir. July 24, 2000) ........................................................................................... 12

*Snell v. Suffolk County*,
   782 F.2d 1094 (2d Cir. 1986) ................................................................................... 13

*Stephenson v. City of Phila.*,
   No. 05-1550, 2006 U.S. Dist. LEXIS 43998
   (E.D. Pa. June 27, 2006) .......................................................................................4, 7, 8

*Stewart v. Weis Markets, Inc.*,
   890 F. Supp. 383 (M.D. Pa. 1995) ........................................................................... 16

*Stewart-Grove v. Alpha Constr. Co.*,
   No. 96-1221, 1997 U.S. App. LEXIS 36133
   (7th Cir. Dec. 19, 1997) ........................................................................................... 15

*Summit v. S-B Power Tool*,
   121 F.3d 416 (8th Cir. 1997) ................................................................................... 17

*Taylor v. Brandywine Sch. Dist.*,
   No. 05-4803, 2006 U.S. App. LEXIS 24643
   (3d Cir. Sep. 29, 2006) ...........................................................................................9, 17

*Underwood v. Sears, Roebuck* & Co.,
   343 F. Supp. 2d 259 (D. Del. 2004) ......................................................................... 19

*Walker v. Werner Enter., Inc.*,
   No. 8:98CV374, 2000 U.S. Dist. LEXIS 20539
   (D. Neb. Mar. 14, 2000) .......................................................................................16, 17, 18

*Watson v. Home Depot USA, Inc.*,
   No. 01-C-1517, 2003 U.S. Dist. LEXIS 13406
   (N.D. Ill. July 31, 2003). .......................................................................................9, 15

*Weiss v. Coca-Cola Bottling Co.*,
   990 F.2d 333 (7th Cir. 1993)........................................................................ 5

*Woodward v. Ameritech Mobile Commc'n, Inc.*,
   No. 98-0744-C, 2000 U.S. Dist. LEXIS 7133
   (S.D. Ind. Mar. 20, 2000)......................................................................... 15

## ARGUMENT

Snyder cannot establish that she was subject to gender-based discrimination in violation of Title VII. Snyder's claim of sexual harassment must fail because she cannot prove that she was subject to severe or pervasive discriminatory treatment. Further, her outright refusal to consider the lateral transfer offered to her as a reasonable and effective remedial measure precludes her from an actionable claim for constructive discharge. Because Snyder voluntarily failed to return to work, she cannot be said to have suffered a tangible adverse job action and, therefore, cannot meet her *prima facie* burden for retaliation. Because of her own repeated refusal to cooperate or otherwise participate in the investigation and subsequent corrective measures taken by CitiSteel, Snyder is now barred from all claims alleged in her complaint. As such, her complaint should be dismissed in its entirety.

## I.    SNYDER FAILS TO ALLEGE ANY CONDUCT THAT COULD SATISFY THE SEVERE AND PERVASIVE REQUIREMENTS NECESSARY FOR AN ACTIONABLE HOSTILE ENVIRONMENT CLAIM

"Courts have set a high standard for what constitutes severe and pervasive harassment." *Harvill v. Westward Commun., LLC*, 311 F. Supp. 2d 573, 581 (E.D. Tex. 2004). Snyder has failed to satisfy the "rigorous" and "stringent" standard required to establish severe and pervasive conduct. *Id.* Instead, she makes vague, broad-sweeping claims about behavior that, at the worst, could be seen as unprofessional. "Employment discrimination law does not provide a remedy for every unsavory interaction occurring in the course of one's employment." *Lignore v. Hosp. of Univ. of Pa.*, No. 04-5735, 2006 U.S. Dist. LEXIS 43996, at *29 (E.D. Pa. June 27, 2006). Even if the alleged behavior could be labeled as "distasteful, vulgar, and unprofessional," the behavior alleged by Snyder does not amount to an objectively hostile work environment and is, therefore, insufficient to withstand the present motion for summary judgment. *See id.*

### A.    Snyder's Thinly Veiled Attempt to Utilize Two Different Timelines Fails to Hide the Insufficiency of Her Claims

As a preliminary matter, Snyder's ever-changing timeframe must be addressed yet again. In response to CitiSteel's Opening Brief, Snyder has narrowed the timeframe for the incidents she claims as harassment. She now asserts that the harassment began in "mid-2002" and continued until her termination in April 2003. (D.I. 98 at 30).

This relatively shorter time period, as compared to her previous allegations that the harassment began in August 2001, also serves her well in trying to avoid the obvious impact of the *Ellerth-Faragher* affirmative defense. The problem, however, with this time period is that, as Snyder states, the "few instances" of alleged behavior she claimed occurred during the shorter period "are not severe and pervasive enough to constitute harassment under the law." (D.I. 98 at 17). So, to "boost" her claim, Snyder identifies no less than fourteen instances, which she contends will enable her hostile environment claim to withstand summary judgment. (D.I. 98 at 16). The first four such instances took place when she claims the harassment began, "mid-2002." (D.I. 98 at 16).

So then, which story is to be believed? To support the necessary "severe or pervasive" elements of her hostile work environment claim, Snyder attempts to reach as far back as possible, thereby collecting as many alleged incidents as she can. For this purpose, she claims that there were instances of harassment as far back as August 2001 on her "second day of work." (D.I. 98 at 16). Then later, when such an extended period of harassment would be to her disadvantage, Snyder changes the story, claiming that her delay in reporting her allegations began in "mid-2002," instead of the previously asserted August 2001.

If her first version is believed and the harassment began in August 2001, the *Ellerth-Faragher* defense is surely triggered for her patently unreasonable twenty-month delay in reporting the complained of behavior. Yet, if her second version is believed, and the behavior did not start until mid-2002, the allegations occuring prior to that time are not eligible for consideration to support a finding of severe and pervasive behavior. Based on this conflicting information, only nine of the fourteen allegations may be considered.

Notably, Snyder failed to identify four of these nine incidents in her written complaint to CitiSteel, in her Charge of Discrimination filed with the EEOC, or in her Complaint filed with this Court.[1] (A53-54; A84-85; D.I. 98). Snyder testified that she signed each of these documents under the penalty of perjury. (A245; B231). Yet, only during her deposition did she first mention these four new allegations. (A166; B129). *See Clegg v. Falcon Plastics, Inc.*, 174 Fed. Appx. 18, 26 (3d

---

[1] Snyder did not allege the following in her written complaints: Harris staring at her, standing in her way in the door, grabbing his genitals as he sat down, or saying "pretty woman" while in her office. (B234).

Cir. 2006) (noting that plaintiff raised new allegations in her deposition that she had not raised to her employer); *Mosakowski v. PSS World Med., Inc.*, 329 F. Supp. 2d 1112, 1122 (D. Az. 2003). For the purposes of summary judgment, where all inferences must be drawn in favor of the non-moving party, CitiSteel will ignore the questionable discrepancies between Snyder's allegations at the time of the alleged conduct and the behavior she now asserts to be relevant, more than three years later, and address all nine incidents she now claims.

Snyder admits that five of the alleged incidents occurred only once, when Harris allegedly: (1) stood in the doorway to the common office, which Snyder shared with the Melt Shop managers, and stared at her; (2) failed to move quickly enough out of Snyder's way, "so she was forced to brush against him" on her way out of the office; (3) "grabbed" his genitals as he sat down; (4) said the words, "pretty woman," while in Snyder's office; and (5) stated she could "come to work wearing no panties" and then dashed out, laughing. (D.I. 98 at 16).

Snyder alleges four incidents that occurred on more than one occasion, when Harris allegedly stood close to her and smelled her and smelled her head, asked her what type of perfume she was wearing "almost every day," and, on "numerous occasions," squeezed her cheek and stroked her hair. (D.I. 98 at 16, 20, 23).

The ten incidents of purportedly harassing behavior directed against Snyder, which Snyder (but no other witness) repeats at every opportunity but does not document otherwise, individually or collectively, were not sufficiently severe or pervasive to alter the terms and conditions of her employment, an element that is required to state a claim under Title VII. *See Lignore,* 2006 U.S. Dist. LEXIS 43996, at *25.

**B.    The Conduct Alleged by Snyder Is Not Objectively Severe or Pervasive**

Even in the light most favorable to Snyder, none of the alleged incidents are objectively severe or pervasive enough to save her claim from dismissal. As an objective matter of fact, none of the alleged incidents are sufficiently severe or pervasive to save her claim.

**1.    Even In the Light Most Favorable to Snyder, the Three Incidents Involving Physical Contact Are Objectively Insufficiently Severe to Constitute a Hostile Work Environment**

Snyder claims that she was subject to "several incidents of physical contact." (D.I. 98 at 17-18). (Actually, she describes only three such incidents in her brief.) She alleges that, on one

occasion, she was "forced to brush against [Harris]" when he did not move out of her way quickly enough. (D.I. 98 at 17-18). She also claims that Harris "would squeeze [her] cheek" and "stroke [her] hair" on a "nearly daily basis." (D.I. 98 at 18).

The first claimed contact can hardly be seen as being based on Snyder's gender because it was Snyder, not Harris, who initiated any contact. Snyder testified that she "pushed" him out of her way. (A166). It is inconceivable how *Snyder's physical actions* should somehow be imputed to Harris as an act of harassment. Snyder, in her own words, was not subjected to any physical contact except for the contact she initiated without the consent of Harris. (A166).

The two other claimed physical encounters involve Snyder's claims that Harris "would squeeze [her] cheek" and "stroke [her] hair." (D.I. 98 at 18). Snyder again mischaracterizes her prior testimony about these allegations. In her brief, she claims that Harris touched her face and hair and smelled her perfume "daily" or "practically daily," "maybe missing one day per week" (D.I. 98 at 20, 23). However, in her deposition, Snyder testified that Harris pinched her cheek "a couple of times" and that, in response, she "probably smacked at him." (A286). When asked how many times Harris had stroked her hair, she replied, "I don't know, several, many . . . 20 million." (A287). Assuming that Snyder's recent iteration is to be believed, cheek pinching and touching hair does not trigger the level of severity required to withstand summary judgment.

Some forms of contact, "'although . . . uncomfortable for the person touched, are relatively minor,' such as '[a] hand on the shoulder, a brief hug, or a peck on the cheek.'" *Powell v. United Ins. Co.*, No. 04C0829, 2006 U.S. Dist. LEXIS 40644, at *16-17 (E.D. Wis. June 16, 2006) (*quoting Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir. 2000)). Further, "even more intimate or more crude physical acts—a hand on the thigh, a kiss on the lips, a pinch of the buttocks—may be considered insufficiently abusive to be described as 'severe.'" *Id.* at *17. The alleged contact with Snyder's face and hair are far from the type of contact that the courts have found warrant objectively severe or pervasive harassment.

Indeed, physical contact, as compared to verbal comments, may increase the severity of the plaintiff's claims but only to the extent that the contact was "physically *threatening or humiliating.*" *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (emphasis added). In fact, the *absence* of physical threats will weigh strongly against a finding of severe and pervasive conduct. *See Stephenson v. City*

3

*of Phila.*, No. 05-1550, 2006 U.S. Dist. LEXIS 43998, at *33-34 (E.D. Pa. June 27, 2006) (*citing Cooper-Nicholas v. City of Chester, Pa.,* No. 95-6493, 1997 U.S. Dist. LEXIS 20810 (E.D. Pa. Dec. 30, 1997)).  Snyder does not allege that she felt physically threatened or humiliated by any of the "several" (three) incidents of physical contact.

Additionally, none of the alleged physical contact involved intimate body parts, thereby reducing the objective severity even further.  *DiCenso v. Cisneros*, 96 F.3d 1004, 1009 (7th Cir. 1996) (concluding that the plaintiff did not establish a hostile environment when physical contact did not involve an intimate body part); *see also Powell*, 2006 U.S. Dist. LEXIS 40644, at *20 (finding that the claimed physical contact, touching the inside of the plaintiff's knee after asking if she wanted to "mess around," rubbing his leg against hers during lunch at a restaurant with coworkers, and rubbing her shoulders and poking her in the ribs when she objected, constituted only "minor" physical contact because it "did not involve intimate body parts.")

An extensive body of case law demonstrates that the allegations of physical contact in this case fall far short of the type of behavior the courts require for a finding of objective severity.  For example, in *Lignore v. Hospital of University of Pennsylvania*, the plaintiff alleged that her harasser had elbowed her, stood inappropriately close to her, touched her arm repeatedly, snapped her bra strap, and constantly brushed against her buttocks, hips or breasts.  2006 U.S. Dist. LEXIS 43996. The court held that, while the contact, "could conceivably amount to annoying, overly familiar or informal, or even offensive behavior," it was insufficiently abusive to survive summary judgment.  *Id.* at *7-8; *28.  The court went on to explain that even more serious, intimate, or crude physical conduct may not necessarily rise to the level of a hostile environment.  *Id.* at *28 (*citing Hostetler*, 218 F.3d at 808).

In *Shepherd v. Comptroller of Public Accounts,* the Fifth Circuit found that conduct far more serious than alleged by Snyder was insufficiently sever to withstand summary judgment. 168 F.3d 871, 873 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999).  In *Shepherd*, the supervisor was accused of touching the plaintiff on numerous occasions, one of which included rubbing his hands down her arm from her shoulder to wrists.  *Id.* He was also alleged to have made several inappropriate comments, including references to the color of her nipples.  *Id.*  The court found that the alleged behavior, which occurred over the course of two years, was "boorish and offensive" but was not objectively severe to

constitute actionable sexual harassment. *Id.* at 873. The behavior alleged in *Weiss v. Coca-Cola Bottling Co.*, met a similar fate. 990 F.2d 333, 337 (7th Cir. 1993). In *Weiss*, the plaintiff's allegations that the harasser attempted to kiss her on three occasions, had touched her several times, asked her out on dates and placed "I love you" signs in her work area, were held insufficiently severe to withstand summary judgment. *Id.*

A compellingly similar set of facts is found in *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir. 1998). The plaintiff claimed that, on business trips, her supervisor asked her about sexual dreams, insisted that she work in his hotel room despite her protests, and took her to a Hooter's restaurant. *Id.* at 1260. He commented about the plaintiff's bra strap when it was visible and discussed the shape of a woman's breasts. *Id.* He followed her to the bathroom and, at least twice a week, he stood and stared at her while she was working. *Id.* He leaned against her repeatedly while he tried to look down her blouse, needlessly touched her on numerous occasions, and often snuck up and grabbed her from behind. *Id.* at 1261. Finally, he asked the plaintiff "what she was wearing under her dress and laughed when she said she did not appreciate the comment." *Id* at 1260.

This continued for three years despite the plaintiff's repeated insistence that it stop. Even in the aggregate, these allegations were held to be insufficiently severe to survive summary judgment. *Id.* at 1257. The court reasoned that most of the behavior was "motivated by poor taste and a lack of professionalism" rather than gender. *Id.* at 1263. Snyder's allegations are trivial when compared to the *Penry* facts. Under the large body of case law, Snyder's claims are not objectively hostile.

**2.    The Non-Physical Conduct Alleged by Snyder Is Objectively Insufficient**

As with the physical contact, neither of the two alleged comments can be considered objectively serious. On a single occasion, Snyder claims that Harris came into the office and picked up the phone. She "heard him say 'pretty woman' [and] looked up at him," to which he responded, "Oh, I'm not talking to you." (B234). Snyder next claims that Harris "dashed into the office," and commented that she should "come to work wearing no panties." (D.I. 98 at 16).

The first comment can be described only as a fiction created by Snyder. She claims that Harris was only *pretending* to be on the phone and that, in fact, he was directing the words to her. (B234). Even if the court could consider this baseless conclusion, it is far from severely hostile. In fact, Snyder does not even allege what his intended message was. Nor does she even claim that the

comment was sexual in nature. "Th[is] allegation[ is] trivial. There is not a trace of either maliciousness, lewdness, or inequity in the way he dealt with [Snyder]." *Garone v. UPS,* 436 F. Supp. 2d 448, 466 (E.D.N.Y. 2006).

Similarly, the second alleged comment regarding "wearing no panties," was said as he laughed and then "dashed" out of the room. Snyder does not believe Harris made the comment intending her to actually comply. As in *Penry*, where the harasser asked the plaintiff "what she was wearing under her dress and laughed," this comment is similarly insufficient to constitute a hostile environment. 155 F.3d at 1260; *see also Carrasco v. Boeing Co.,* 190 Fed. Appx. 650 (10th Cir. 2006) (no hostile environment where plaintiff contended her supervisor asked her "several times to show him her thong underwear"); *Mackie v. U.S. Mfg., Inc.,* No. 03-85-LRR, 2005 U.S. Dist. LEXIS 17301, at *6 (N.D. Iowa June 29, 2005) (no hostile environment where plaintiff contended her supervisor asked her "on at least five occasions what type of underwear she was wearing and asked her on a number of occasions if she was wearing . . . thong underwear").

At worst, the comments could be considered "vulgar banter, tinged with sexual innuendo." *Id.* at 430-31. Neither of the statements are "objectively threatening, harsh or abusive and arguably cannot even be characterized as vulgar." *Powell*, 2006 U.S. Dist. LEXIS 40644 at *17. Comments like this, which "could [] be repeated on primetime television" are insufficient to trigger Title VII liability." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995).

## C.  Snyder Was Not Subjectively Affected by the Alleged Conduct

To survive summary judgment on her hostile environment claim, Snyder must show not only that the behavior she alleges was objectively hostile, but also that she subjectively perceived the conduct as hostile. *Andrews v. Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990). The subjectivity element can be satisfied by showing that the plaintiff was physically threatened or intimidated by the alleged action, that it affected her emotional wellness, or otherwise interfered with her work performance. *Faragher City of Boca Raton*, 524 U.S. 775, 777-78 (1999). Snyder has not alleged any of these elements, nor has she produced any evidence upon which one could reasonably conclude that she was, in fact, affected by the alleged behavior. This omission is fatal to her claim.

**1. Snyder Was Not Physically Threatened or Intimidated by Harris**

Snyder admits that she was not physically threatened by Harris. (B262). Instead, far from feeling threatened, Snyder testified that, when Harris "bothered" her, she just "told him to shut the F up." (B262). The lack of any physical threats, either perceived or actual, weighs strongly against a finding of a subjectively hostile environment. *Stephenson v. City of Phila.*, *No. 05-1550,* 2006 U.S. Dist. LEXIS 43998, at *33 (E.D. Pa. June 28, 2006); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995).

Snyder's own descriptions of Harris' alleged behavior makes clear that her hostile environment claim must fail. Snyder argues that Harris was "rude." (D.I. 98 at 22). She also says that Harris' behavior was "inappropriate." (D.I. 98 at 18). Inappropriate, rude behavior is plainly insufficient to establish a hostile environment claim. *See e.g., Arasteh v. MBNA Bank, N.A.*, 146 F. Supp. 2d 476, 495 (D. Del. 2001).

When Snyder's allegations are considered cumulatively, she plainly has failed to establish that her work environment was objectively hostile. Neither the statements nor the physical conduct were objectively physically threatening or intimidating, nor did Snyder subjectively feel threatened. Rather, the statements were not out of place in the industrial, blue-collar workplace of the Melt Shop and the physical contact was minor. Accordingly, even when considered in the light most favorable to Snyder, her allegations, when taken in the aggregate, fail to constitute a hostile work environment.

**2. Snyder Admits that Her Work Performance Did Not Suffer Due to Any Interference Caused by Harris**

Snyder provided repeated testimony about the superior quality of her work. She testified that she was a "wonderful employee." (B153). At no time did Snyder make any mention of any difficulty she had in completing her work. It is difficult to conceive how her work performance was positively superior and, yet, at the same time, tragically subject to Harris' constant interference.

As described by Snyder, she did not begin to experience any emotional distress until after her separation from CitiSteel. (D.I. 98 at 19). Snyder spends several pages of her brief summarizing the notes taken by her counselor during their therapy sessions. (D.I. 98 at 19-21). These sessions, however, did not begin until after Snyder left CitiSteel and, therefore, are irrelevant to the question of whether the alleged behavior interfered with her work performance *while she was still employed.*

The only indication Snyder makes of her emotional state during her employment is when she states that she felt so sick to her stomach that she was unable concentrate. (D.I. 98 at 21).  Again, this claim is irrelevant because she is referring only to how she felt on April 8, the day she filed her complaint.  (B169-70).  Snyder has failed to provide any evidence of how her job performance was affected during her employment.

**D.     Snyder's Conclusory Allegations Serve Only to Discredit Snyder and Her Testimony and Render Such Allegations Unusable**

Snyder claims that Harris touched her hair and cheek "almost daily," or "practically every day."  (D.I. 98 at  23).  Though given numerous opportunities to provide additional details to support these vague allegations, Snyder has declined to do so, limiting her responses to these conclusory statements.  Snyder's refusal or failure to provide any details surrounding her allegations is reason for the court to discredit such conclusory statements.  *Stephenson*, 2006 U.S. Dist. LEXIS at *33 n2.

Claims that harassment occurred "numerous" times are nothing more than "conclusory allegations, [which] preclude a fact finder from determining the 'totality of the circumstances' required to evaluate severe and pervasive conduct and, hence, fail to create an issue of material fact." *Harvill*, 311 F. Supp. 2d at 582 (refusing to consider claims that the alleged harasser had touched the plaintiff's breasts and buttocks on "numerous" occasions); *see also Harris v. City of Carrollton*, No. 3:01-CV-1249-M, 2002 U.S. Dist. LEXIS 21040, at *3 (N.D. Tex. Oct. 30, 2002) (finding that the plaintiff's vague and broad-sweeping allegations were "conclusory in the extreme, thus foreclosing a fact-finder's ability to weigh the totality of the circumstances in which his remarks were made").

 Snyder has produced absolutely no evidence to demonstrate that CitiSteel created a hostile environment.  Instead, she relies upon her own "unsupported assertions, conclusory allegations, or mere suspicions," all of which are insufficient to withstand summary judgment.  *Maurizio v. Fox Chapel Foods, Inc.*, No. 02:04cv1168, 2006 U.S. Dist. LEXIS 62926, at *25 (W.D. Pa. Sept. 5, 2006) (*citing Podobnik v. U.S.P.S.*, 409 F.3d 584, 594 (3d Cir. 2004)).

In an attempt to escape this reality—that the ambiguity of Snyder's claims and her inability to provide any additional, specific details about the dates and times of the alleged behavior—Snyder claims that her testimony is consistent.  (D.I. 98 at  22).  This is of little comfort.  The mere fact that she has *repeated* her vague allegations does nothing to change the fact that they were vague.  Her

vague, albeit repeated, testimony on the alleged incidents of harassment fails to create an inference of discrimination. *See Taylor v. Brandywine Sch. Dist.*, No. 05-4803, 2006 U.S. App. LEXIS 24643, at *16 (3d Cir. Sep. 29, 2006) (holding that plaintiff's vague testimony could not create an inference of discrimination where plaintiff could not identify specific dates or other relevant details).

## II.    SNYDER CANNOT SHOW THAT CITISTEEL IS NOT ENTITLED TO THE PROTECTIONS OF THE ELLERTH-FARAGHER DEFENSE

Snyder's allegations, even when considered in the aggregate, fall far short of the legal standard required for a finding of hostile work environment. However, the Court need not even necessarily reach a determination on whether the claims were sufficiently severe and pervasive because the present matter is subject to dismissal under the *Ellerth-Faragher* affirmative defense.

Where the plaintiff was not subject to a tangible employment action, the *Ellerth-Faragher* defense will bar liability so long as the employer can show: (a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff unreasonably failed to take advantage of any preventative or corrective measures provided by the employer or to otherwise avoid harm. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. at 807 (together, the "*Ellerth-Faragher* defense").

There was no tangible employment action in the present case.[2]  Snyder was not constructively discharged from her employment with CitiSteel. An unfavorable evaluation is not considered a tangible job action. Thus, CitiSteel is entitled to dismissal of the present matter pursuant to the *Ellerth-Faragher* defense because it exercised reasonable care in preventing and correcting the complained of behavior and because Snyder unreasonably failed to take advantage of these preventative and corrective measures. *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

Snyder does not allege that CitiSteel failed to take the requisite preventative measures through the institution of its sexual harassment policy. *See Shaw v. Autozone, Inc.*, 180 F.3d 806, 811 (7th Cir. 1999) (*quoted in Watson v. Home Depot USA, Inc.*, No. 01-C-1517, 2003 U.S. Dist. LEXIS 13406, at *23 (N.D. Ill. July 31, 2003)). Instead, she claims that the investigation and subsequently proposed lateral transfer did not satisfy CitiSteel's "remedial obligation." (D.I. 98 at 25). In support

---

[2] Though Plaintiff states that it is her "strong contention" that there was, in fact, a tangible job action, she makes no legal argument in support thereof. (D.I. 98 at 24).

of this allegation, Snyder applies the wrong standard of law to a misconstrued set of facts.  However, when the facts supported by the record are evaluated in light of the correct legal standard, it is clear that CitiSteel went far beyond its legal duties in taking reasonable corrective measures in response to Snyder's allegations.

### A.    CitiSteel Satisfied Its Duty to Take Reasonable Corrective Measures by Conducting a Proper Investigation

In her answering brief, Snyder attempts to gloss over CitiSteel's immediate response to Snyder's claims, as well as her repeated refusal to provide any of her alleged evidentiary support despite CitiSteel's numerous requests.  While ignoring these facts, Snyder makes the unsupportable accusation that CitiSteel's investigation was "rigged."  Again, Snyder's unsupported allegations based on her own baseless suspicions are ineligible for consideration in the present motion.

In "support" of this accusation, Snyder claims that:  (1) Downie did not request to review Snyder's "evidence" on the same day she filed her complaint; and (2) Downie met Harris off-site after business hours for a third interrogation.  (D.I. 98 at 25-26).  Neither statement is even close to an accurate representation of the facts in the record nor does either statement, in any way, go to prove that the investigation was "rigged."

The parties do not dispute that Snyder offered to provide Downie with certain pieces of what she claimed was evidence in support of her allegations.  Nor do the parties dispute that, at that time, Downie declined her offer to review the supposed evidence.  During his deposition, Downie explained that he "had a concern that any tape . . . could be doctored."  (A478).  He went on to explain that he was concerned at first because "[he is] not a sound expert" (A479), and that "it's very difficult to prove who or what is on an audiotape."  (A478).

What Snyder curiously omits, however, is any of the numerous record cites that clearly establish that, just the next day, Downie did request that Snyder bring her evidence for his review and that Snyder refused to do so.  (A259-62).

Without any cite to the record in support thereof, Snyder broadly states that CitiSteel concluded its investigation "*before* even listening to Ms. Snyder's tape and reviewing her documentation."  (D.I. 98 at 25).  Regardless of her failure to cite any authority for this statement, Snyder is indeed correct—Downie was unable to review Snyder's alleged evidence.  What Snyder

conveniently ignores that the lack of review can be attributable only to Snyder—her repeated and defiant refusal to produce any of her alleged evidence was the only reason CitiSteel was forced to close the investigation at that time.

Snyder then proposes that the fact Downie requested that Harris meet him off-site at a local Bennigan's restaurant "just reeks of impropriety." (D.I. 98 at 26). The record, however, clearly indicates that Downie asked Harris to meet him for dinner, at which time Downie continued to drill Harris with further questioning about the details of his relationship with Snyder. (A390). With the use of creative linguistics, Snyder turns this into a meeting "over a beer in a local bar." (D.I. 98 at 26).

This description does not reflect the tenor nor the purpose of the meeting as supported by the record. Downie clearly explained that the purpose of this meeting was to again confront Harris with Snyder's allegations in the hopes of getting to the truth of the matter:

> Q:   Why did you choose to meet him off site as opposed to meeting him at CitiSteel?
> A:   Because we are very, very, very busy and I wanted to be in a quiet atmosphere . . . which is not unlike other business situations where you would ask an employee out to lunch or dinner or whatever **to talk about a serious matter**. That's why.

(A517-18). Even if Snyder's gross mischaracterization of the record was taken as true, it appears that she does not have any problem with meeting "in a local bar over a beer" because, on the very next page of her brief, Snyder claims that she also should have been "afforded the same opportunity . . . to have a meeting off-site." (D.I. 98 at 27). She first argues that such an off-site meeting "reeks of impropriety," then complains that she was not offered the same chance at an opportunity for impropriety.

What *is* reflected in the record is a thorough, impartial investigation conducted by CitiSteel immediately upon learning of Snyder's allegations and concluded only when Snyder refused to participate, refused to provide the evidence she claimed to have, and then, in a brazen act of insubordination, attempted to secretly tape a meeting with her superiors during which she was hostile, belligerent, and out of control.

Snyder has superimposed a higher standard than the law requires. "The law does not require that investigations into sexual harassment complaints be perfect." *Knabe v. Boury Corp.*, 114 F.3d 407, 413 (3d Cir. 1997). She insists that the investigation should have been conducted according to how *she* saw fit. She claims that Downie's request to review her evidence on the second day of the

investigation, somehow implies a faulty outcome. She attacks Downie for his attempt to seek the truth by conducting an additional, off-site meeting with Harris.

The law does not require an employer to model its investigation on the employee's specific demands, and certainly cannot be expected to do so when such demands are not put forth until the investigation has been long-concluded. Instead, what the law does require is "reasonableness, not perfection" in developing, implementing, and enforcing sexual harassment policies and procedures. *Silver v. GM Corp.*, No. 99-2121, 2000 U.S. App. LEXIS 17752, at *10 (4th Cir. July 24, 2000) (*quoting Brown v. Perry*, 184 F.3d 388, 397 (4th Cir. 1999)).

**B.    The Lateral Transfer Was An Effective and Appropriate Remedial Measure that Snyder Unreasonably Refused Without Even Considering**

"Within one week after Human Resources received [Snyder]'s complaint, [CitiSteel] initiated an investigation," determined that, without further evidence, Snyder's claims could not be substantiated, formally addressed Harris and "warned him that [any later discovered proof of the claimed behavior] could lead to his dismissal, and arranged for [Snyder] to be transferred to a new department with the same compensation and [benefits] package." *Finnerty v. Wm. H. Sadiler, Inc.,* 176 Fed. Appx. 158, 162 (2d Cir. 2006). CitiSteel's immediate and appropriate response to Snyder's allegations, in combination with Snyder's unjustified refusal to participate in the investigation and subsequent refusal to accept the offered transfer satisfies both elements of the *Ellerth-Faragher* defense, thus shielding CitiSteel from liability.

Snyder argues that the proposed transfer to an identical position in the Shipping Department, where the only change in her job would be to separate her from her alleged harasser, was not appropriate. She makes this claim on three grounds: (1) that CitiSteel did not provide her with a detailed explanation of "the terms and conditions of the new job, as well as the reason for the transfer;" (2) that CitiSteel did not explain to Snyder that the new position would involve the same job duties; and (3) that she was not told that her job was being eliminated in the Melt Shop. (D.I. 98 at 27). Although creative, these arguments are without any support in the law.[3]

---

[3] Which may be reflected by the absence of any supporting case law cited in this section of Snyder's brief.

Instead, the law makes clear that reasonableness is the applicable standard when deciding how to effectively stop and prevent future inappropriate behavior. "Title VII does not convey upon an employee the absolute right to demand that a workplace dispute be resolved in a way that is most attractive to her. Title VII simply requires that the remedial action taken be reasonably calculated to end the [complained of behavior]." *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 495 (S.D.N.Y. 2000) (*citing Snell v. Suffolk County*, 782 F.2d 1094, 1103-04 (2d Cir. 1986) (applying reasonableness standard to employer's attempt to remedy racially hostile work environment).

CitiSteel's decision to transfer Snyder out of the environment she claimed was so hostile, out of the physical workspace she shared with her alleged harasser, and out of his supervisory authority, undoubtedly meets the reasonableness test. The fact that Downie "did not tell her" that the position had the same duties is irrelevant. Snyder refused to allow him to give her that information when she became hostile and belligerent, refusing to even take a tour of the Shipping Department. (A503) CitiSteel repeatedly attempted to provide her with information about the position but was met each time with obstinate refusals by Snyder. CitiSteel cannot now be blamed for Snyder's unwillingness to listen.

Further, CitiSteel had no obligation to provide Snyder with a detailed description of the "terms and conditions" of the new position or for the "reason for the transfer" nor does Snyder allege the existence of such a policy. Instead, she simply claims that *because she wanted* a written explanation, it was, therefore, unreasonable for CitiSteel not to provide one. The law requires *objective* reasonableness and "cannot be based upon the employee's subjective preference for one position over another." *Cooper v. Wyeth*, 106 F. Supp. 2d at 496 (holding that a "transfer, while not [the plaintiff]'s preferred method of handling the matter, would have been a reasonable step to remove the allegedly intolerable fact of working with [the alleged harasser].") (*citing Gray v. York Newspapers, Inc.,* 957 F.2d 1070 (3d Cir. 1992)).

### C.    Snyder Repeatedly and Unreasonably Failed to Participate in CitiSteel's Investigation

Snyder failed to report the alleged behavior for nearly a year. Her delay in utilizing CitiSteel's corrective measures was unreasonable as a matter of law. Snyder attempts to avoid this

inevitable conclusion by claiming that her delay was reasonable because "her delay stemmed from fear that she would lose her job" and cites a single case to support this conclusion. (D.I. 98 at 28).

Snyder ignores the multitude of case law that rejects her contentions outright. For example, Snyder ignores the Third Circuit's 2006 decision in *Clegg v. Falcon Plastics, Inc*, 174 Fed. Appx. 18 at *25. In *Clegg*, the court held that the plaintiff's four-month delay in reporting the alleged conduct supported the conclusion that the defendant had satisfied its burden as to the second prong of the *Ellerth-Faragher* defense. *Id.* (*citing Cardenas v. Massey,* 269 F.3d 251, 267 (3d Cir. 2001)); *see e.g., Garone v. UPS,* 436 F. Supp. 2d 448, 466 (E.D.N.Y. 2006) (holding that an eighteen month delay is unreasonable as a matter of law); *Dayes v. Pace Univ.,* No. 98 Civ. 3675, 2000 U.S. Dist. LEXIS 3698, at *5 (S.D.N.Y. March 24, 2000) (holding that a twelve month delay in reporting conditions is unreasonable as a matter of law), *aff'd* 2 Fed. Appx. 204 (2d Cir. 2001); *O'Dell v. Trans World Entm't. Corp.*, 153 F. Supp. 2d 378, 391 (S.D.N.Y. 2001) (holding that one year delay in reporting is unreasonable as a matter of law), *aff'd* 40 Fed. Appx. 628 (2d Cir. 2002)

Snyder also ignores the numerous cases that have repeatedly declined to consider this proffered "excuse" for her unreasonable failure to report her complaint—that she allegedly feared some form of retaliation.[4] (A212-13). For Snyder's alleged reluctance "to preclude [CitiSteel's] affirmative defense, it must be based on apprehension of what [CitiSteel] might do." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 295 (2d Cir. 1999). Such apprehension, however, must be grounded in fact and previous experience. *Leopold v. Baccarat, Inc.*, 239 F.3d 243 (2d Cir. 2001) ("a credible fear must be based on more than the employee's subjective belief) (*citing Caridad*, 191 F. 3d at 295); *see also Matvia v. Bald Head Island Mgm't, Inc.,* 259 F.3d 261, 272 (4th Cir. 2001) (holding that a "nebulous fear" of retaliation is not an adequate basis for remaining silent).

Snyder must produce affirmative evidence that CitiSteel ignored or resisted discrimination or sexual harassment complaints by other employees. *O'Dell*, 153 F. Supp. 2d at 391. Instead, Snyder has created a fiction, based on nothing more than her imagination, in which she alleges that it was likely CitiSteel would retaliate because she was one of only a few female employees. (D.I. 98 at 29).

---

[4] Snyder makes this claim for the first time in her answering brief when faced with impending dismissal. At no time during her lengthy deposition testimony, however, did she ever allege that she in any way "feared" for the loss of her job.

As creative as this new allegation be may, it falls far short of the type of positive evidence the law requires before accepting excuses for delayed reporting. *Watson*, 2003 U.S. Dist. LEXIS at \*26 (holding that the complainant's duty to report her claims are not eviscerated because she "fears confrontation, unpleasantness or retaliation for speaking out") (*citing Shaw*, 180 F.3d at 813).

Snyder omits any mention of her refusal to cooperate with CitiSteel during its investigation, her refusal to provide CitiSteel with the tapes and documents she claimed supported her case, and her belligerent insubordination during her meeting with Downie. Snyder's outright unreasonable failure to cooperate with CitiSteel's investigation satisfies CitiSteel's burden on the affirmative defense, thus precluding a finding for Snyder. *Woodward v. Ameritech Mobile Commc'n., Inc.*, No. IP 98-0744-C, 2000 U.S. Dist. LEXIS 7133, at \*40-41 (S.D. Ind. Mar. 20, 2000) (holding that defendant satisfied its burden under the affirmative defense where it showed that the plaintiff refused to cooperate in the investigation of her complaint, even though her refusal was at the advise of an attorney); *see also Stewart-Grove v. Alpha Constr. Co.*, No. 96-1221, 1997 U.S. App. LEXIS 36133, at \*11 (7th Cir. Dec. 19, 1997) (applying the affirmative defense where the plaintiff refused to speak with an independent investigator hired by the defendant to investigate the plaintiff's claims).

The only "excuse" proffered by Snyder for her refusal to provide CitiSteel with any of the physical evidence she claimed to possess is that "she was not given the opportunity" to do so and, she goes on, CitiSteel "did not want" to see her evidence anyway, based on the "fact" that it had "already" made the decision to transfer Snyder. (D.I. 98 at 30). This outrageous claim is not supported by anything in the record, nor does her brief make any reference to such support.

What the record undisputedly demonstrates is that the purpose of the meeting on April 10th was to review the evidence Snyder had been asked to bring with her and to *then* make a decision. (A259; A260; A261; A262). Snyder failed to bring the evidence. Instead, she brought a tape recorder and tried to secretly tape the meeting. When asked to turn the recorder off, she outright refused. CitiSteel did not review the evidence prior to its decision to transfer Snyder *because Snyder refused to provide it* and, instead, engaged in a hysterical attack on Downie and Ryan. Snyder's irrational refusal to provide any evidence in support of her claims and her subsequent display of insubordinate and provocative behavior more than demonstrates her unreasonable refusal to utilize CitiSteel's corrective measures. Snyder, therefore, is barred from recovery because of her own, unreasonable

15

behavior. *See e.g., O'Dell*, 153 F. Supp. 2d at 389 (holding that plaintiff's refusal to participate in the investigation, even upon the advice of counsel, was unreasonable).

### III.    SNYDER'S REFUSAL TO ACCEPT THE LATERAL TRANSFER PRECLUDES HER CONSTRUCTIVE DISCHARGE CLAIM AS A MATTER OF LAW

> Where an employer immediately begins an investigation upon being made aware of an employee's sexual harassment complaints, offers to transfer an employee, and an employee simply refused transfer and failed to return to work, **a constructive discharge has not occurred.**

*Stewart v. Weis Markets, Inc.*, 890 F. Supp. 383 (M.D. Pa. 1995) (emphasis supplied). The case law is clear—Snyder's refusal of the lateral transfer to an equivalent position in Shipping requires the dismissal of her constructive discharge claim. *See Cooper*, 106 F. Supp. 2d at 495 (holding that an employee who refused even to consider a transfer as an alternative before deciding that resignation is the only option cannot make out a claim of constructive discharge); *Clowes v. Allegheny Hosp.*, 991 F.2d 1159, 1162 (3d Cir. 1993) (a reasonable employee will usually explore such alternatives thoroughly before coming to the conclusion that resignation is the only option); *Finnerty*, 2006 U.S. App. LEXIS at *7-8 (finding no constructive discharge where plaintiff refused to return to work after she was reassigned to remove her from the harasser's supervision); *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (holding that "no reasonable fact finder could construe" plaintiff's refusal to transfer and subsequent failure to return to work as a constructive discharge); *Walker v. Werner Enter., Inc.*, No. 8:98CV374, 2000 U.S. Dist. LEXIS 20539, at *34 (D. Neb. Mar. 14, 2000) (dismissing claim where "there can be no serious dispute" that the company's response to the complaint was prompt and remedial to the extent reasonably possible and, by refusing the offered transfer without trying the new position, the plaintiff was barred from bringing a claim of constructive discharge).

To defeat a claim for constructive discharge, an employer must only provide a working environment that is not "intolerable." *See e.g., Clegg*, 174 Fed. Appx. at 18 (*citing Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 888 (3d Cir. 1984)). The standard is "very low" for this "most disfavored of all causes of action." *Cooper*, 106 F. Supp. 2d at 495. Establishing a claim of constructive discharge is "not an easy task" and requires a showing that a "reasonable employee would have felt compelled to resign under the circumstances." *Stewart*, 890 F. Supp. at 392.

16

Included in an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too quickly. *Id.* An employee who quits without giving her employer a reasonable chance to work out a problem cannot be said to have fulfilled this obligation and, therefore, has not been constructively discharged." *Summit v. S-B Power Tool*, 121 F.3d 416, 421 (8th Cir. 1997).

Snyder's preference to remain in the Melt Shop is of no consequence to the present discussion. "The victim of alleged sexual harassment is not in a position to dictate the employer's personnel decisions." *Walker,* 2000 U.S. Dist. LEXIS at *35. Even assuming Snyder's claimed preference was sincerely held, her subjective belief that the Melt Shop was somehow "better than" the Shipping Department does not qualify as intolerable working conditions. *Cooper,* 06 F. Supp. 2d at 497; *Krizman v. AAA Mid-Atl., Inc.*, No. 06-402, 2006 U.S. Dist. LEXIS 74647, at *15 (E.D. Pa. Oct. 12, 2006).

## IV.    SNYDER'S REFUSAL TO ACCEPT THE LATERAL TRANSFER PRECLUDES HER RETALIATION CLAIM AS A MATTER OF LAW

Snyder cannot establish a *prima facie* case of retaliation because, as a matter of law, she cannot show the requisite adverse action. *See Taylor,* 2006 U.S. App. LEXIS at *18 (*prima facie* case requires showing of adverse action). Snyder alleges, without citation to any legal authority, that CitiSteel's "attempt" to transfer her satisfies the adverse action requirement.[5] (D.I. 98 at 33).

Snyder's "resignation was by choice rather than by force, so it is not a materially adverse employment action." *Walker,* 2000 U.S. Dist. LEXIS at *39. "A purely lateral transfer," such as was offered to Snyder and "which does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). Similarly, a transfer or reassignment that involves only minor changes in working conditions does not constitute an adverse job action. *See Jones v. Fitzgerald*, 285 F.3d 705, 714 (8th Cir. 2002); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) (requiring more than an alteration of job responsibilities or other minor inconvenience). In short, a mere lateral

---

[5] On the prior page, Snyder seems to suggest that a negative performance evaluation somehow supports her retaliation claim. The case law, however, is clear. Performance evaluations do not constitute an "adverse action" for the purposes of retaliation. *Morrison v. Carpenter Techn. Corp.*, No. 05-1922, 2006 U.S. App. LEXIS 21448, at *17 (3d Cir. Aug. 22, 2006).

transfer, even with some new, additional duties, will not, as a matter of law, constitute an adverse employment action as is required for a *prima facie* case of retaliation.

In response to this well-established precedent, Snyder cites no legal authority but simply states that "[t]here was adverse action . . . because Downie attempted to transfer her to a less desirable position." (D.I. 98 at 33). Snyder's subjective opinion of the Clerk/Typist position in the Shipping Department will not save her claim from dismissal. Title VII does not "convey upon an employee the absolute right to demand that a workplace dispute be resolved in a way that is most attractive to her." *Cooper*, 106 F. Supp. 2d at 494.

Finally, because Snyder refused to even try the new position, and left work before spending a single day in the Shipping Department, she cannot prove that, viewed objectively, the transfer was an adverse action. *Marrero v. Goya of P.R.*, 304 F.3d 7, 25 (1st Cir. 2002) (affirming dismissal of retaliation claim where plaintiff was transferred to a similar position that involved slightly more work responsibilities and "left work after spending no more than three days in her new position"). The plaintiff is required to prove "tangible change in duties or working conditions." *Phillips v. Collings,* 256 F.3d 843, 848 (8th Cir. 2001). Snyder, however, cannot make such a showing because she walked off the job before even attempting the new position. Snyder's reliance upon her own "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to withstand summary judgment. *Maurizio,* 2006 U.S. Dist. LEXIS at *24 (internal citations omitted).

## V.    SNYDER CANNOT ESTABLISH THE ELEMENTS REQUIRED FOR AN AWARD OF PUNITIVE DAMAGES OR FRONT OR BACK PAY

In its Opening Brief, CitiSteel established that Snyder has failed to offer any evidence in support of an award of punitive damages. (D.I. 94 at 38). Because the evidence demonstrates that CitiSteel's response to Snyder's complaint was immediate and thorough, and because Snyder admittedly was aware of CitiSteel's well-publicized harassment policy, there can be no liability for punitive damages. (D.I. 94 at 38). CitiSteel also asserted that Snyder is barred from an award of front pay damages and that any potential back pay damages stopped accruing when she was terminated from subsequent employment. (D.I. 94 at 39).

Snyder does not respond to the contention that she cannot proffer any evidence that would support an award of punitive damages. Because Snyder, as the non-moving party, has failed to even

allege that such evidence exists or to respond in any other way to CitiSteel's request to preclude an award of punitive damages, summary judgment must be granted on this request. *See e.g., Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999); *Underwood v. Sears, Roebuck* & Co., 343 F. Supp. 2d 259, 271 (D. Del. 2004).

Snyder's failure to remain "ready, willing and able" to work prohibits her from an award for front or back pay damages. For the purposes of summary judgment, CitiSteel will not dispute that Snyder made reasonable mitigation efforts. Snyder does not dispute that she was terminated from interim employment at Verizon and, later, at American Flagging, where she worked part-time while employed at CitiSteel. (B977; D.I. 38 at 36).

Plaintiffs who voluntarily resign or remove themselves from the job market have not adequately mitigated their damages. *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 696 (2d Cir. 1998). Snyder was terminated from her job at Verizon, and from her flagging job, where, as she admits, she earned a "more lucrative" income than at CitiSteel. (D.I. 38 at 36). A duty to compensate for back pay is discharged when the plaintiff's circumstances have changed so that she ceased suffering from the alleged economic harm. *Denton v. Boilermakers Local 29*, 673 F. Supp. 37 (D. Mass. 1987) (collecting cases). Her claim that the Verizon position was not "secretarial" is unmeritorious (A241-243) and, because she worked as a flagger "on and off" for several years, including during her employment with CitiSteel, flagging was a comparable position at a higher salary, thereby cutting off any potential back pay award. *Brenlla v. Lasorsa Buick Pontiac Chevrolet, Inc.*, No. 00-Civ.-5207, 2002 U.S. Dist. LEXIS 9358, at *34-35 (S.D.N.Y. May 28, 2002).

At the outermost extreme, any award of back pay would be cut off in October 2005 when she made the decision to change careers and become a truck driver, thereby permanently removing herself from the "secretarial" job market. *See Dailey v. Societe Generale*, 108 F.3d 451, 456-57 (2d Cir. 1997) (failure to mitigate where the plaintiff pursues education that precludes her from accepting employment similar to that which she held with the defendant); *Miller v. Marsh*, 766 F.2d 490, 492-93 (11th Cir. 1985) (as a full-time law student, claimant had not fulfilled her duty to mitigate as a matter of law).

**CONCLUSION**

For the reasons set forth in the opening brief and the brief above, Defendant CitiSteel USA, Inc. respectfully requests that summary judgment be granted and that Plaintiff Terry L. Snyder's Complaint be dismissed in its entirety.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Margaret M. DiBianca
Sheldon N. Sandler, Esquire (No. 245)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor, P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6673; (302) 571-5008
Facsimile: (302) 576-3330; (302) 576-3476
Email: ssandler@ycst.com; mdibianca@ycst.com
Attorneys for Defendant

DATED:         January 16, 2007