IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TERRY L. SNYDER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) C.A. No. 04-970-JJF |
| CITISTEEL USA INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**DEFENDANT CITISTEEL USA, INC.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO STRIKE**

        Sheldon N. Sandler, Esquire (No. 245)
        Margaret M. DiBianca, Esquire (No. 4539)
        YOUNG CONAWAY STARGATT & TAYLOR, LLP
        The Brandywine Building
        1000 West Street, 17th Floor
        P.O. Box 391
        Wilmington, Delaware 19899-0391
        Telephone: (302) 571-5008
        Facsimile: (302) 576-3476
        Email: mdibianca@ycst.com
        Attorneys for Defendant

Dated: February 2, 2007

## NATURE AND STAGE OF THE PROCEEDINGS

The present matter was filed by Plaintiff Terry L. Snyder on August 25, 2005. (D.I. 2). In her Complaint, Plaintiff alleges that she was subject to unlawful discrimination based on her sex by her former employer, Defendant CitiSteel USA, Inc. ("CitiSteel"). (D.I. 2). Discovery closed on September 1, 2006. (D.I. 12).

On December 6, 2006, Defendant filed a Motion for Costs and Sanctions, to which Plaintiff responded and which is currently pending disposition by the Court. (D.I. 96-97). A pre-trial conference is currently scheduled to be held on March 8, 2007.

Defendant filed its Motion for Summary Judgment on November 21, 2006. (D.I. 92). Plaintiff filed her Answer to Defendant's Motion on December 22, 2006, (D.I. 98), and Defendant filed its Reply on January 17, 2007. (D.I. 101). In the Appendix to her Answering Brief, Plaintiff included a copy of an unofficial, unauthenticated transcript, generated by Defendant's counsel's office. (D.I. 101 at B2-35). Defendant moves to strike these pages of Plaintiff's Appendix from consideration for the purposes of the pending summary judgment Motion.

**STATEMENT OF FACTS**

    **A.**    **The Audio Tapes and Transcripts**

The transcripts in question were generated from audio tapes produced by Plaintiff during discovery. In her Initial Disclosures made pursuant to Rule 26(a), Plaintiff stated that she was in possession of "[v]arious tapes containing conversations between Plaintiff and employees of Defendant" that were relevant to her allegations. See Exhibit 1.

The sound quality of the tapes was very poor and it was difficult to understand the conversations that had been recorded. The undersigned counsel for Defendant had the tapes transcribed by its in-house word processors. The staff assigned to create these "best effort" transcripts were not licensed court reporters but "fill-in" legal secretaries. Due to the poor nature of the sound quality, the undersigned instructed the transcriptionist to indicate where the tape was inaudible or where there was uncertainty as to the words but to otherwise simply "do their best." The transcripts were generated as attorney work-product to have a paper copy of the contents of the tapes for future reference.

Plaintiff testified about the tapes at her deposition on June 6, 2006, explaining that there were actually three tapes that she believed supported her claims. See Exhibit 2. One, she claimed, was a conversation between herself and her supervisor, Randolph Harris (the "Harris Tape"). See Exhibit 3. The other two, she claimed, were recorded at her meeting with Human Resources Manager Jerome Downie on April 10, 2003 (collectively, the "Downie Tape"). See Exhibit 4. In her responses to Defendant's

Requests for Admission, Plaintiff confirmed that these three recordings were the only tapes she claimed supported her claims. (D.I. 77 at 1).

Snyder admitted that she recorded the Harris Tape without his knowledge or consent. (D.I. 77 at 2). Harris testified that he knew nothing about the tape until after Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in April 2003, approximately four months after Plaintiff alleges she made the recording. See Exhibit 5. Snyder also admitted that she created the Downie Tape when she recorded her meeting with HR Manager Downie secretly and against his wishes, despite his repeated requests to turn off the recorder. See Exhibit 6.

Although Snyder refused to produce the tapes to CitiSteel during its investigation into her complaint of harassment, she did eventually turn over copies of the tapes to the EEOC. She did so, however, with protest and only after the EEOC Investigator informed her that further refusal to produce the tapes would result in the dismissal of her Charge. See Exhibit 7.

The tapes turned over to Defendant during discovery are only copies of copies of the original tapes. Plaintiff's counsel explained to the undersigned in a telephone conversation that Plaintiff is so concerned about losing the original copies of the tapes that she refused to give even her own counsel the originals. Instead, Plaintiff's counsel only has a copy of the original that Plaintiff provided after discovery had begun. From that copy, Plaintiff's counsel produced another copy, which was given to Defendant during discovery. And it was from the copy of the copy that the transcripts in question were generated.

### B. Plaintiff's Failure to Review the Transcripts as Agreed

On August 14, 2006, the undersigned suggested to Plaintiff's counsel that the transcripts generated by the undersigned's staff could be used as a "starting point" in a joint effort by the parties to obtain an accurate written transcript. See Exhibit 8. She explained that she would be willing to share the transcripts for the purpose of having Plaintiff review them and compare them to the tapes "to correct the errors, because [Defendant's counsel was] sure there are errors, given the quality of the tapes." See Exhibit 8. Plaintiff's counsel responded that she thought the suggestion was a good idea. See Exhibit 8. The next day, August 15, 2006, Defendant's counsel forwarded the transcripts as editable Microsoft Word documents to Plaintiff's counsel. See Exhibit 9.

Defendant's counsel confirmed the parties' agreement in a letter on August 21, 2006. See Exhibit 10. In the letter, the undersigned reiterated that "the tapes were transcribed by my office in an attempt to generate a written record of the tapes. You agreed to have Ms. Snyder review the transcripts for accuracy and indicate in writing any corrections she believes need to be made." See Exhibit 10. Defendant's counsel went on to review that, after she received Plaintiff's comments, the parties would "move toward a final draft of the transcripts to be submitted as part of the formal record." See Exhibit 10. At the request of Plaintiff's counsel, Defendant re-sent one of the transcripts on September 7, 2006. See Exhibit 11.

On September 11, 2006, Defendant's counsel again requested that Plaintiff comply with the agreement that she would review the transcripts. See Exhibit 12. On September 19, 2006, Plaintiff's counsel notified Defendant's counsel via e-mail that Plaintiff had cancelled her deposition scheduled for September 20, 2006. See Exhibit 13.

In the same e-mail, Plaintiff's counsel stated that she "had planned to meet with [Snyder that day, September 19] to review the tapes . . . but unfortunately, she was not able to come in."  See Exhibit 13.  Counsel for both parties spoke on September 20, 2006 and Plaintiff's counsel told the undersigned that she had provided the transcripts to Plaintiff for her review but that Plaintiff had failed to return her comments.  See Exhibit 14.  Plaintiff's counsel assured undersigned that she would ensure that the transcripts and comments were returned to Defendant's counsel as soon as possible, but in any event, no later than October 6, 2006.  See Exhibit 14.  Defendant's counsel confirmed this verbal agreement in a letter dated September 22, 2006.  See Exhibit 12.

Counsel for both parties spoke again after Plaintiff cancelled her deposition for a second time.  Plaintiff's counsel told the undersigned that Snyder had completed her review of the tape transcripts and that counsel and client were scheduled to meet on September 29, 2006, following Plaintiff's re-scheduled deposition, to review Snyder's comments.  See Exhibit 15.   Defendant's counsel reiterated this agreement in a letter, stating that the parties had agreed that the transcript edits would be forwarded to the undersigned on Friday, September 29, 2006.  See Exhibit 16.

On the morning of September 29th, however, Plaintiff's counsel called to report that Plaintiff would not be attending her deposition as scheduled.  See Exhibit 17  On October 5, 2006, Plaintiff's counsel told Defendant's counsel that she would "check on . . . the status of the transcripts."  See Exhibit 18.  When Plaintiff did appear for her deposition, on October 16, 2006, she testified about her delay in providing her comments.  See Exhibit 19.

7

> Q: How about the tapes? Have you done those yet? Have you had an opportunity to review the transcripts?
>
> A: You know what. I do apologize. I am not done. Yeah, I am not done. I do apologize. I swear, I will get them done within the week. Can we try a week, something? Promise.

See Exhibit 19. Plaintiff also agreed that there were a great number of errors in the transcripts, thus further necessitating her review. See Exhibit 19.

> Q: . . . I had them done here just in our word processing department. So there is going to be likely, I would presume, errors.
>
> A: Oh, God. Well, I started - - -
>
> Q: Go ahead.
>
> A: I started to go through with it. And whatever that name is Michael Holt or Haut [in the transcript], whatever, I never heard it before in my life. I know there is no way it's on any of the tapes. I understand what you are saying, there is going to be errors, period.

See Exhibit 19. Despite Plaintiff's assurances that she would have her comments completed within a week of her October 16th deposition, they had still not been received by Defendant's counsel on November 1, 2006. See Exhibit 20. Defendant's counsel again wrote to Plaintiff's counsel reminding her of the incredulous delay, despite repeated assurances by Plaintiff and her counsel, and requested a response indicating Plaintiff's position. See Exhibit 20.

On November 7, 2006, nearly three months after the parties initially agreed to Plaintiff's review of the transcripts, Plaintiff's counsel forwarded one of the three agreed-upon transcripts. See Exhibit 21  Plaintiff had handwritten her comments on only one of the three transcripts. The only transcript returned with edits by Plaintiff was the Downie Tape. Plaintiff never provided Defendant's counsel with her comments

8

or revisions to the Harris Tapes. The next time Defendant saw the transcript of the Harris Tape was when Plaintiff filed her response to the pending Motion for Summary Judgment.

## ARGUMENT

The transcript of the Harris Tape submitted by Plaintiff in her Summary Judgment Answering Brief should be stricken from the record in accordance with Federal Rule of Civil Procedure 56(e). Fed. R. Civ. P. 56(e). Neither the tapes nor the transcripts at issue have been properly authenticated and, additionally, are inadmissible hearsay that do not fall within any of the exceptions to the hearsay rule. See Fed. R. Evid. 901(a).

Although a party must produce evidence in support of its opposition to a motion for summary judgment, not all types of evidence are permissible. McQuain v. Ebner Furnaces, Inc., 55 F. Supp. 2d 763, 769-70 (N.D. Ohio 1999). The principles of admissibility of evidence do not change on a motion for summary judgment. See Raskin v. Wyatt Co., 125 F.3d 55, 56 (2d Cir. 1997). Documentary evidence submitted in opposition to summary judgment but which has not been properly authenticated is the proper subject of a motion to strike. Cavicchia v. Phila Housing Auth., No. 03-116, 2003 U.S. Dist. LEXIS 20311, at *19 (E.D. Pa. Nov. 7, 2003) (citing 11 James Wm. Moore, Moore's Fed. Prac. § 56.14(4)(a) (3d ed. 1997)). Authentication can be achieved either by an affidavit that meets the requirements of Rule 56(e) or in accordance with the Federal Rules of Evidence. See Williams v. Eckerd Family Youth Alternative, 908 F. Supp 908, 911 (M.D. Fla. 1995). Because Plaintiff did not and cannot authenticate the transcript, pages B2-B35 should be stricken from the record.

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." Fed. R. Evid. 901(a). Wells v. XPEDX, No. 8:05-2193, 2006 U.S. Dist. LEXIS 79789, at *16-17 (M.D. Fla. Oct. 31, 2006). Here, there can be no evidence to support a finding that the transcript of the Harris Tape is, in fact, what Snyder claims it to be. Even Snyder herself, admitted under oath that the transcripts were riddled with errors.

A transcript may not be submitted without the original recording and transcript being properly authenticated. Dagen v. CFC Group Holdings, Ltd., No. 5682, 2004 U.S. Dist. LEXIS 6582, at *3 (S.D.N.Y. Apr. 13, 2004). Here, Plaintiff's failure to submit the original tape recording with the transcript (or even to her own counsel) necessarily requires the exclusion of the transcript. See Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d 9, 15 (1st Cir. 2006) (finding that the plaintiff's failure to submit the underlying documents referenced by plaintiff in a summary provided to the court required that the summary document be stricken from the record). Even if she had provided the Court with the original tape, it would not save the transcript from the present Motion. The tape also would be stricken for lack of foundation and authentication. See Steele v. Jennings, No. 2:04-189, 2005 U.S. Dist. LEXIS 18703, at *9 (S.D. Ohio Aug. 31, 2005). Further, Plaintiff may not suggest that it is, in some way, the Court's job to authenticate the transcript by listening to the tape and comparing it to the submitted document. Steele, 2005 U.S. Dist. LEXIS at *10.

An unofficial transcript generated from a tape recorded conversation, such as the one submitted by Plaintiff, is a quintessential example of an unauthenticated

document subject to a motion to strike.  For example, in Steele v. Jennings, the plaintiff submitted an audiotape purporting to be an interview of the defendant and a transcript of the tape recording.  Id.  The court ruled that both exhibits be stricken from the record for lack of authentication.  Id. at *9-10.  In response to the defendants' motion to strike the audiotape, the plaintiff argued that it was admissible simply because the defendants had produced it.  Id. at *8.  The court flatly rejected this argument, stating "[s]imply because the Defendants produced the documents does not make them authentic – production does not equate to authentication."  Id. at *9.

The plaintiff then tried to submit an affidavit to salvage the submitted transcript, which had been prepared by someone in his counsel's office.  Id. at *9.  In the affidavit, Plaintiff's counsel purported to authenticate the accuracy of the tape and transcript.  Id.  The court again rejected this argument outright.  The affiant, plaintiff's counsel, had not prepared the transcript and, therefore, did not have the requisite personal knowledge to meet the standards of Rule 56(e).  See Fed. R. Civ. P. 56(e) (affiant must have, among other things, personal knowledge about the contents of the affidavit).

Similarly, in Perkins v. Memorial Sloane-Kettering Cancer Center, the plaintiff submitted two transcripts of secretly recorded conversations.  No. 02-6493, 2005 U.S. Dist. LEXIS 22541, at *44 (S.D.N.Y. Oct. 5, 2005).  Both transcripts were stricken from the record based on the fact that neither had been authenticated prior to submission.  Id. (holding that transcripts submitted by plaintiff of a voicemail message and an audio recording of a meeting were stricken where neither transcript had been authenticated).

Tape recordings are also subject to a motion to strike as inadmissible hearsay.  See, e.g., Wiley v. U.S., 20 F.3d 222, 225-56 (6th Cir. 1994) ("hearsay

11

evidence cannot be considered on a motion for summary judgment"). Recorded conversations and their corresponding transcripts are inadmissible hearsay that do not fall under a recognized exception to the hearsay rule. For example, in <u>Klein v. Manor Healthcare Corporation</u>, the Sixth Circuit affirmed the District Court's grant of the defendant's motion to strike. No. 92-4328, 1994 U.S. App. LEXIS 6086, at *18 (6th Cir. Mar. 22, 1994). The district court excluded tape recorded phone conversations between plaintiff and the decedent, and the decedent and her attorney. <u>Id.</u> The Court of Appeals affirmed the District Court's finding that the recorded conversations were inadmissible hearsay. <u>Id.</u> Specifically, the court rejected the plaintiff's claim that the evidence was admissible as a present sense impression under Rule 803(1) or as a then existing mental, emotional or physical condition under Rule 803(3). <u>Id.</u> at *18-19.

   Plaintiff's failure to abide by the procedure agreed upon by the parties and her subsequent submission of one of the three transcripts she had agreed to review does not comply with a general sense of fairness. Plaintiff's submission is especially disturbing considering she chose to submit the transcript that she failed to review as she had repeatedly promised to do. The transcript itself, however, does not comply with the Federal Rules of Civil Procedure nor the Federal Rules of Evidence. Plaintiff failed to authenticate the transcript prior to submitting it in opposition to summary judgment. Nor did Plaintiff submit an affidavit in an attempt to authenticate the transcript.

   It is not difficult to imagine why she failed to authenticate the document prior to its submission, however. Authentication would have been impossible. Plaintiff had already testified under oath that the transcripts were riddled with errors and even

12

contained names of persons she had never known. By Plaintiff's own admission, the transcripts were inaccurate and incomplete.

    Plaintiff submitted only one of the three transcripts with her comments to Defendant's counsel. And, although the submission was late, the numerous edits and corrections demonstrate that she was even more aware of the unreliable nature of the document. This glaring fact, coupled with Plaintiff's failure to comply with the procedure agreed upon by both parties, prevents her from now using this document as evidentiary support. Plaintiff should not be able to profit from her production of her comments to Defendant's counsel only a few weeks before the summary judgment deadline, after months of excuses and avoidances.

13
DB02:5149731.1                                                                                                           064633.1002

## CONCLUSION

For the reasons set forth in the brief above, Defendant CitiSteel USA, Inc. requests that its Motion to Strike be granted and that pages B2-35 of Plaintiff's Appendix filed simultaneously with Plaintiff's Answering Brief in Opposition to Defendant's Motion for Summary Judgment be stricken from the record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Margaret M. DiBianca, Esquire
Sheldon N. Sandler, Esquire (No. 245)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-5008
Facsimile: (302) 576-3476
Email:  mdibianca@ycst.com
Attorneys for Defendant

Dated:   February 2, 2007