IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TERRY L. SNYDER, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-970(JJF) |
| | ) | |
| v. | ) | |
| | ) | |
| CITISTEEL USA, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF TERRY L. SNYDER'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE

**MARGOLIS EDELSTEIN**
Jeffrey K. Martin (Del Bar. #2407)
Lori A. Brewington (Del Bar #4522)
1509 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 777-4680
Fax: (302) 777-4682
Attorneys for Plaintiff

Dated: February 21, 2006

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Terry L. Snyder filed a *pro se* Complaint in this matter on August 24, 2004. (D.I. 1). In her Complaint, she alleged that she was subject to unlawful discrimination based on her sex by her former employer, Defendant CitiSteel USA, Inc. (hereinafter "CitiSteel"). Discovery closed on September 1, 2006 (D.I. 12).

On December 6, 2006, Defendant filed a Motion for Costs and Sanctions, to which Plaintiff responded and which is currently pending disposition by the Court. (D.I. 96-97). A pre-trial conference is currently scheduled to be held on March 8, 2007.

Defendant filed its Motion for Summary Judgment on November 21, 2006. (D.I. 92). Plaintiff filed her Answer to Defendant's Motion on December 22, 2006, (D.I. 98), and Defendant filed its Reply on January 17, 2007. (D.I. 101). In the Appendix to Plaintiff's Answering Brief, Plaintiff included a transcript of a conversation between Randolph Harris, the alleged sexual harasser, and Plaintiff which was generated and produced by Defendant's counsel's office. (D.I. 101 at B2-35).

## STATEMENT OF FACTS

Defendant's Motion to Strike concerns a transcript of a conversation between the Plaintiff and Randolph Harris, Plaintiff's supervisor and also the alleged harasser. The transcript was generated from audio tapes produced by Plaintiff during discovery. In Plaintiff's Initial Disclosures, Plaintiff identified audio tapes containing conversations between Plaintiff and employees of Defendant that were relevant to her allegations. Thereafter, Plaintiff took the original tape recordings to a company that specializes in producing copies of tape recordings to have copies made. She then produced copies of the tapes to both her counsel and to Defendant.[1]

Plaintiff testified about the tapes at her deposition on June 6, 2006, explaining that there were two conversations that she recorded; one conversation with Plaintiff and Randolph Harris in January 2003 and another conversation with Jerry Downie in April 2003. (See Def's Exhibits 2, 3, and 4). Randolph Harris was not aware that he was being recorded during his conversation with Plaintiff in January 2003. Jerry Downie, however, was fully aware that Plaintiff was tape recording the conversation because Plaintiff placed the recorder in plain view on the table in Jerry Downie's office. (See Exhibit 1).

The sound quality on the tapes is very poor and as a result, it is very difficult to understand the conversations that were recorded. In September 2006, Defendant's counsel informed undersigned counsel that "we will need to have some sort of written version of the tapes" and suggested that Plaintiff review the transcripts to make sure there were no errors. (See Def's Exhibit 8). Plaintiff agreed to review the transcripts for accuracy and indicate in writing any corrections she believed needed to be made. On August 15, 2006, Defendant's counsel forwarded three out of four transcripts as Microsoft Word documents to undersigned counsel. (See Def's Exhibit 9). At the request of undersigned counsel, Defendant sent the fourth transcript on September 7, 2006. (See Def's Exhibit 11 and 12).

---

[1] Defendant's assertions that "The tapes turned over to Defendant during discovery are only copies of copies of the original tapes" and that "…It was from a copy of the copy that the transcripts in question were generated" is inaccurate.

On November 7, 2006, undersigned counsel forwarded Defendant's counsel a copy of the edited transcript of the conversation that took place between Plaintiff and Jerry Downie on April 10, 2003, the date of Plaintiff's termination from CitiSteel. (D.I. 101 B-0074-0078). Plaintiff included this transcript (D.I. 101 B-0074-0078) in its Appendix to the Answering Brief in Opposition to Defendant's Motion for Summary Judgment and it is not the subject of Defendant's Motion to Strike. Defendant's Motion to Strike concerns only the transcript of the conversation between Randolph Harris and Plaintiff and Plaintiff's use of this transcript in the Appendix to Plaintiff's Answering Brief. (D.I. 101 B-0002-0035).

Plaintiff's Answering Brief was due on December 22, 2006. At that time, Plaintiff had not yet completed her edits to the transcript. As a consequence, the transcript was included in the Appendix at B-0002-0035 without Plaintiff's edits. Plaintiff just recently completed her review of the transcript and has submitted her edits herewith. (See attached as Exhibit 2). Plaintiff acknowledges that she did not complete her review of this tape within a timely fashion. (See Exhibit 3). In the attached affidavit, Plaintiff explains the delay was attributed to two reasons. First, Plaintiff is not trained in the area of transcription; therefore, it was very difficult for her to listen to the tapes and transcribe the respective conversation. Id. Second, listening to the tapes was extremely upsetting for Plaintiff because it was a constant reminder of her unfortunate experience while employed at CitiSteel. Id.

Plaintiff's Answering Brief in Opposition to Defendant's Motion for Summary Judgment includes the following references and/or citations to the transcript at issue in Defendant's Motion to Strike:

1.      In a taped conversation between Ms. Snyder and her supervisor, Randolph Harris ("Harris"), in January 2003, Harris praised Ms. Snyder for her job performance.

| | |
|---|---|
| Ms. Snyder: | Tell me if I'm doing something wrong. |
| Mr. Harris: | No, no. Terry let me tell you something. I want to bragged on you ever since you been. That office has been more organized now than it ever has been. |
| Ms. Snyder: | Thank you very much. |
| Mr. Harris: | Oh, it has, believe me, I know. Yeah. |

(Answering Brf at 4).

2.      Upon the advice of her father, Edward Vouras ("Mr. Vouras"), she taped a conversation with Harris on January 10, 2003, three days after Harris asked Ms. Snyder to come to work wearing a

4

dress with no panties, confronting him about his "rude" behavior. (Transcript of tape B-0005-0008, Vouras at 8, B-0505, Vouras at 20, B-0508).

(Answering Brf at 6).

      3.      What is perhaps most telling, Harris is caught on tape praising Ms. Snyder for her work performance.

(Answering Brf at 8).

      4.      During this meeting on April 8, 2003, Ms. Snyder informed Downie that she could produce and audio tape of Harris's admission of the wrongfulness of his conduct, as well as diary entries. (B-0093; Downie at 20, B-0342).

(Answering Brf at 10).

      5.      Later that day, Downie contacted Ms. Snyder at her home and asked her to drop off her tape recordings of Harris. (Snyder at 274, B-0221).

(Answering Brf at 13).

      6.      Ms. Snyder did not bring the tape of Harris to this meeting because she did not feel comfortable. (Snyder at 281, B-0222).

(Answering Brf at 13).

      7.      Harris was caught on tape apologizing for his "rude" behavior. (B-0005-0008).

(Answering Brf at 22).

      8.      Similarly, in the instant case, the Defendant accepted Harris's assertion that he did not sexually harass Ms. Snyder and advised her that she would have to transfer to the Shipping Department *before* even listening to Ms. Snyder's tape and reviewing her documentation.

(Answering Brf at 25).

      9.      She also informed Downie that she could also produce a tape of Harris's admission of wrongdoing, as well as diaries but Downie "was not interested in the tapes" because he did not know whether they would be relevant. (Downie at 22, B-0343).

(Answering Brief at 25).

      10.     When Ms. Snyder reported to CitiSteel that she was being sexually harassed by Harris, she advised both Buragino and Ford that she had diary entries and a tape of Harris apologizing for wrongdoing. (B-0093, Downie at 20, B-0342). Downie admits that he told Ms. Snyder that he did not want to hear the tapes because he "did not want to reach those channels." (Downie at 22, B-0343; Snyder at 261, N-0217)

(Answering Brief at 29).

5

11.    Moreover, the Defendant did not want to view Ms. Snyder's documents and tape, as evidenced by the fact that Defendant had already determined that Harris would remain at CitiSteel in the Melt Shop, and Ms. Snyder would be shipped to the Shipping Department before it even reviewed any of her evidenced.

(Answering Brief at 30).

<h2 style="text-align:center">ARGUMENT</h2>

Defendant contends that the transcript of the "Harris Tape", B-0002-0035, submitted by Plaintiff in her Summary Judgment Answering Brief should be stricken from the record in accordance with Federal Rule of Civil Procedure 56(e). Defendant argues that Plaintiff did not authenticate the transcript and therefore, there is no evidence to support a finding that the transcript of the "Harris Tape" is, in fact, what Plaintiff claims it to be. (Def's Mem. at 10).

While it is true that Plaintiff did not submit her edits to the transcript *prior* to the deadline for submitting Plaintiff's Answering Brief, Plaintiff recently completed her review of the transcript and has attached a copy of the "Harris Transcript" as an exhibit to Plaintiff's Opposition to Defendant's Motion to Strike herewith (See Exhibit 2). Some of the statements in Defendant's transcription were inaccurate. Based on Plaintiff's review of the original tape of the conversation between Plaintiff and Randolph Harris, she made the appropriate edits to the transcript. (See Exhibit 3). The transcript, with Plaintiff's edits, accurately reflects the tape recorded conversation between Harris and Plaintiff as authenticated by Plaintiff. (See Exhibit 3). Plaintiff's delay in submitting the edited transcript was attributed to her lack of training in the area of transcription, as well as, to her unwillingness to "revisit" her unfortunate experience while employed at CitiSteel. (See Exhibit 3). Upon request, Plaintiff will immediately submit the original tape recordings to this Court.

Randolph Harris, the alleged harasser, admitted during his deposition, after listening to the tape, that both Plaintiff and he were the voices on the tape. (See Exhibit 4). He testified that he "vaguely" recalls the conversation and that he does recall apologizing for "something" on the tape. Id. When asked if he recalled laughing during this conversation, he testified that he was probably smiling during his taped conversation with Plaintiff. Id.

In her Answering Brief, Plaintiff made 11 references/citations to the "Harris Tape". Many of Plaintiff's references refer solely to the tapes' existence and not to the content of the taped conversation. Rather than strike the "Harris Transcript", B-0002-00035, in its entirety for lack of authenticity or foundation, Plaintiff respectfully requests that the Court allow Plaintiff to supplement the transcript to include Exhibit 2. Defendants will not be prejudiced by allowing Plaintiff to supplement the record because Plaintiff's edits to the "Harris Transcript" do not materially alter or affect the transcript that has already been produced in this case.

Defendant also contends that the "Harris Tape", B-0002-00035, should be stricken because it constitutes inadmissible hearsay. (Def's Mem. at 11). However, the "Harris Tape" constitutes a statement which is *not* hearsay under FRE 801(d)(2)(A) because it is offered against a party and is the party's own statement in Randolph Harris's individual capacity as a General Supervisor for CitiSteel. Alternatively, the "Harris Tape" constitutes a statement which is *not* hearsay under FRE 801(d)(2)(D) because it is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. "In order to introduce evidence of an out-of-court statement as nonhearsay under Rule 801(d)(2)(D), a party must lay a sufficient foundation by establishing (1) the existence of the agency relationship (2) that the statement was made during the course of the relationship and (3) that it relates to a matter within the scope of the agency." Marcic v. Reinauer Transp. Cos., 397 F. 3d 120, 128-29 (2d Cir. 2005).

In the instant case, Plaintiff can sufficiently lay a foundation to introduce evidence of an out-of-court statement by Harris under FRE 801(d)(2)(D). First, an agency relationship existed between Randolph Harris and CitiSteel because Harris served as a General Supervisor for CitiSteel and Plaintiff's direct manager. Second, the statements on the "Harris Tape" were made during the course of Harris's employment relationship while Harris was serving as Plaintiff's direct supervisor. Third, the statements made by Harris on the tape relate directly to Harris's treatment of Plaintiff as her supervisor and his opinion of her work performance which is within the scope of the agency relationship.

Although her submission was not timely, Plaintiff has now submitted her edits to both the "Downie Transcript" and the "Harris Transcript". Additionally, Plaintiff has testified as to the authenticity of these documents. (See Exhibit 3).  Any edits or corrections have in no way materially or substantially altered the previous transcript submitted by Plaintiff in her Appendix at B-0002-0035. (See Exhibit 2). Therefore, Defendant will not be prejudiced by allowing Plaintiff to supplement her Appendix with Exhibit 2.

## CONCLUSION

For the reasons set forth in the brief above, Plaintiff Terry Snyder requests that Defendant's Motion to Strike be denied with respect to pages B2-35 of Plaintiff's Appendix filed simultaneously with Plaintiff's Answering Brief. Plaintiff requests that this Court allow Plaintiff to supplement pages B2-35 with Exhibit 2 attached herewith.

**MARGOLIS EDELSTEIN**

Jeffrey K. Martin, Esquire (Del. Bar # 2407)
Lori A. Brewington, Esquire (Del Bar # 4522)
1509 Gilpin Avenue
Wilmington, Delaware 19806
Tel: (302) 777-4680
Fax: (302) 777-4682
Attorneys for Plaintiff

Dated: February 21, 2007