IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TERRY L. SNYDER                      :
                                     :
          Plaintiff,                 :
                                     :
     v.                              :   Civil Action No. 04-970-JJF
                                     :
CITISTEEL USA INC.,                  :
                                     :
          Defendant.                 :

---

Laurie A. Brewington, Esquire, of MARGOLIS EDELSTEIN, Wilmington, Delaware.
Attorney for Plaintiffs.

Sheldon N. Sandler, Esquire, and Margaret M. DiBianca, Esquire, or YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.
Attorneys for Defendant.

---

**MEMORANDUM OPINION**

September 14, 2007
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court are Defendant's Motion For Summary Judgment (D.I. 92) and Motion To Strike (D.I. 103).  For the reasons discussed, the Court will deny the Motion For Summary Judgment and grant the Motion To Strike.

## I.    BACKGROUND

Plaintiff began working for Defendant CitiSteel USA Inc. ("CitiSteel") in August 2001.  She began as a temporary employee, and successfully pursued permanent employment the next month. Though she was cross-trained to assist in other departments, Plaintiff primarily worked as a clerk in CitiSteel's Melt Shop department.  The Melt Shop is divided into sub-departments, and Randolph Harris supervised the Furnace group.  Dennis Ford supervised the Caster and Slab Yard.  Both Harris and Ford reported to Gregory Buragino, Vice President of Manufacturing.

In February 2003, Plaintiff received a written warning from Harris and Ford concerning Plaintiff's attendance and work schedule.  Plaintiff was informed by Ford that the written discipline was Harris' idea, and Plaintiff confronted him, believing the letter was based on false pretenses.  This written warning was later recanted by CitiSteel.

On the afternoon of April 8, 2003, when Harris was not at work, Plaintiff informed Ford that Harris had been sexually harassing her for an extended period of time.  Ford relayed

1

Plaintiff's allegations to Jerry Downie, director of CitiSteel's Human Resources department. After being summoned to the Human Resources department, Plaintiff was asked by Downie and Buragino to formalize her complaint in writing.  In a two-page written account, Plaintiff alleged that Harris rubbed her cheeks saying she was pretty, ran his hand down her hair saying it looked good, asked Plaintiff to come to work on a Saturday wearing a dress and no underwear, asked Plaintiff for dates many times, stood in the doorway to Plaintiff's office staring and grinning at her, and routinely asked Plaintiff what her feelings were for him.[1] Plaintiff also informed Downie that she had maintained logs detailing Harris' behavior, and tape recorded a conversation during which Harris allegedly apologized for asking Plaintiff to come to work without underwear.[2]  Downie did not review that

---

[1] In addition to the allegations made in her written statement, Plaintiff also alleged that Harris continuously asked if he could take her away for weekends, asked on a near-daily basis what type of perfume she was wearing, stood close to her and smelled her, refused to move from Plaintiff's doorway thereby causing Plaintiff to brush up against him as she left her office, grabbed his genitals and squeezed them while in Plaintiff's presence, and had Plaintiff draft school work for him. (D.I. 98 at 16).  The parties dispute which of these incidents should be considered in assessing the totality of the harassment.

[2] This tape recording is the subject of Defendant's Motion To Strike (D.I. 103).  Plaintiff recorded the tape without Harris' knowledge, and subsequently had copies of the original made.  One copy was given to Plaintiff's counsel, and one copy was given to Defendant's counsel.  The tape was a poor quality recording.  Thus, Defendant's counsel offered to have its staff listen to the tape and generate a preliminary transcript. Counsel agreed that Plaintiff would be the first party to look at

evidence.

   That same afternoon, Harris was called to work by Downie and was questioned about Plaintiff's allegations.  Harris denied the allegations.  After speaking with Harris and considering how to proceed, CitiSteel management decided to transfer Plaintiff to a clerk position in the Shipping Department.  On April 9, 2003, Downie asked Plaintiff if she would transfer to another department, and Plaintiff refused, contending that she had done nothing wrong, and asking to remain in the Melt Shop.  Plaintiff requested that Downie explain, in writing, the reasons for the proposed transfer.  Downie refused, and nothing was ever written that explained why CitiSteel management wanted to transfer Plaintiff.  After Plaintiff's continued refusal to accept a transfer, Downie suggested Plaintiff take the rest of the day off to think about the transfer.  She was asked to report to Downie's office the following morning.  Feeling she had been discriminated against, Plaintiff used that time off to initiate a claim against

the preliminary transcript and propose edits, which would then be reviewed by both parties in the hopes of reaching a mutually agreeable final "transcript."  Plaintiff received the preliminary transcript, but failed to return any edits or comments to Defendant.  However, Plaintiff has now included that preliminary, transcript as an exhibit to her opposition to Defendant's Motion For Summary Judgment (D.I. 100, B-0002 - B-0035).  In her Opposition to Defendant's Motion To Strike, Plaintiff has offered a second version of this transcript, with her edits only.  Even though Defendant has not had a chance to review or comment on this second version, Plaintiff urges the Court to accept this second version as evidence in favor of Plaintiff's opposition to summary judgment.

CitiSteel with the Equal Employment Opportunity Commission
("EEOC").

On April 10, 2003, Plaintiff reported to Downie's office and
was again asked to transfer to the Shipping department.
Plaintiff again refused, and asked to return to the Melt Shop.
She was told that she could not return to the Melt Shop because
Harris was there, and CitiSteel policy required Plaintiff and
Harris to remain separated following Plaintiff's complaint.
After again refusing the transfer to the Shipping department,
Downie had Plaintiff escorted off the premises.  Believing she
had been fired, Plaintiff did not return to work on Friday, April
11, 2003.

Plaintiff filed charges with the EEOC on April 29, 2003 and
received a right to sue letter on June 2, 2004.  On August 24,
2004, Plaintiff filed this action alleging discrimination
pursuant to the provisions of Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 2000(e).

**II.  PARTIES' CONTENTIONS**

A.    Motion To Strike

By its Motion, Defendant contends that the unedited
transcript[3] of the Harris Tape[4] submitted by Plaintiff in the

_____

[3]The "unedited transcript" is the transcript of the Harris
Tape prepared by Defendant's counsel's word processing
department.  Defendant forwarded a copy of this transcript to
Plaintiff, requesting that Plaintiff make edits as necessary
based on her interpretation and recollections of the recorded

4

appendix to her answering brief (D.I. 100) should be stricken

from the record in accordance with Fed. R. Civ. P. 56(e) because

Plaintiff failed to file a contemporaneous affidavit

authenticating the transcript.  Defendant further contends that

neither the tapes nor the transcript are admissible as evidence

because they have not been properly authenticated as required by

Fed. R. Evid. 901(a), and that it would be impossible for

Plaintiff to authenticate the transcript after she testified that

it was inaccurate and incomplete.  (D.I. 104, Ex. 10).

Additionally, Defendant contends that the tapes and the

transcript constitute inadmissible hearsay that does not fall

within an exception to the hearsay rule under Fed. R. Evid.

801(d).

     In response, Plaintiff contends that there is no need to

strike the transcript from the record because Plaintiff submitted

the edited transcript[5] with her response and explained in her

_____

conversation.  Defendant further suggested that after receiving
Plaintiff's edits, both parties could discuss the transcript and
eventually reach a "final" transcript acceptable to both parties.

     [4]The Harris Tape consists of two cassette tapes containing a
recorded conversation between Plaintiff and Plaintiff's
supervisor, Randolph Harris, in which Harris allegedly apologizes
for his treatment of Plaintiff.

     [5]The "edited transcript" is a copy of the transcript
prepared by Defendant that includes Plaintiff's handwritten
changes.  Plaintiff prepared the edited transcript by listening
to the Harris Tape while reading Defendant's version of the
transcript.  Plaintiff attached the edited transcript to her
answering brief in response to the motion to strike (D.I. 105).

5

answering brief that her tardiness in submitting the edited
transcript was due to her lack of training in transcription and
her reluctance to revisit her experience at CitiSteel.  Plaintiff
contends that most of the references to the Harris Tape in her
answering brief do not refer to the specific content of the
recorded conversations, but instead are general references to the
existence of the tapes.  In addition, Plaintiff contends that the
Harris Tape is admissible nonhearsay evidence because it is a
statement by the party's agent concerning a matter within the
scope of the employment and made during the existence of the
relationship pursuant to Fed. R. Evid. 801(d)(2)(D).

B.   Motion For Summary Judgment

     By this Motion, Defendant contends that Plaintiff has not
proven a prima facie case for discrimination under Title VII
because Plaintiff has failed to allege actions that are
sufficiently severe or pervasive to create a hostile work
environment, and cannot prove that the alleged behavior would
have detrimentally affected a reasonable woman in her position.
Moreover, Defendant contends, Plaintiff has not proven that the
alleged behavior detrimentally affected her or created a hostile
work environment.

     Defendant further contends that it cannot be held liable for
Harris' actions because Plaintiff unreasonably delayed her
reporting of Harris' alleged behavior and otherwise failed to

cooperate with Defendant's subsequent investigation and remedial measures.  Finally, Defendant contends that Plaintiff cannot prove her harassment/retaliation claim because the transfer offered to her was not a pretextual cover condoning Harris' behavior, but rather, a remedial measure to accommodate Plaintiff, and because Plaintiff did not suffer any tangibly adverse employment action, since Plaintiff voluntarily resigned.

In response, Plaintiff contends that there are genuine issues of material fact in dispute.  Plaintiff notes that the parties factually diverge over the impact of Harris' behavior on Plaintiff and the workplace as whole.  They also disagree over the extent of Harris' harassing behavior that should be considered in this case, the reasonableness of Plaintiff's delay in disclosing the harassment, whether Defendant can be held liable for Harris' behavior, and whether Defendant took tangible adverse employment against Plaintiff.

**III. LEGAL STANDARD**

A.    <u>Motion To Strike</u>

Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, a party may submit supporting or opposing affidavits with its motion for summary judgment to set forth facts that would be admissible in evidence.  Fed. R. Civ. P. 56(e).  Rule 56(e) also requires that "sworn or certified copies of all papers or parts thereof referred to in the affidavit" be "attached

7

thereto or served therewith." Id. Thus, the inquiry is whether the evidence at issue is admissible for the purposes of the Motion For Summary Judgment.

B.    Motion For Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

8

574, 586-87 (1986) (citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

**IV.  DISCUSSION**

A.    <u>Motion To Strike</u>

1.    <u>Whether the unedited transcript of the Harris Tape is admissible for the purposes of summary judgment.</u>

Tape recordings can pose unique evidentiary issues because they are not readily identifiable as an original version and are susceptible to alteration, tampering, and selective editing. <u>U.S. v. Starks</u>, 515 F.2d 112, 121 (3d Cir. 1975). In order to introduce tape recordings into evidence, the proponent must establish that (1) the recording device was capable of taping the conversation, (2) the operator of the device was competent to operate it, (3) the recording is authentic and correct, (4) changes, additions, or deletions have not been made, (5) the recording has been preserved in a manner that is shown to the court, (6) the speakers are identified, and (7) the conversation elicited was made voluntarily and in good faith, without any kind of inducement. <u>Id.</u> at 121 n. 11. Transcripts of tape recordings may be used as an aid in understanding the recordings, and are generally authenticated by the testimony of the party who

prepared them.  5 Jack B. Weinstein, Weinstein's Federal Evidence ¶901.05[5] (2d ed. 2007).

The Court concludes that Plaintiff failed to establish several of the above-listed <u>Starks</u> requirements for admissibility when she included the unedited transcript of the Harris Tape with her response to Defendant's Motion For Summary Judgment. Specifically, the Court finds that the transcript was not verified as authentic and correct, and Plaintiff testified that it contained numerous errors. (Snyder Dep. at 305-06).  As a result, the unedited transcript of the Harris Tape does not constitute admissible evidence as required by Rule 56(e) for the consideration of a summary judgment motion.  Fed. R. Civ. P. 56(e).

Further, the Court concludes that the unedited transcript is inadmissible pursuant to Fed. R. Evid. 901(a) because it has not been authenticated.  Pursuant to Rule 901 of the Federal Rules of Evidence, authentication or identification is required as a condition precedent to the admissibility of evidence.  Fed. R. Evid. 901(a).  The trial judge has discretion in determining the authenticity of the evidence.  <u>U.S. v. Brown</u>, 482 F.2d 1226, 1228 (8th Cir. 1973).  Factors to be considered in determining the admissibility of evidence under Fed. R. Evid. 901(a) include the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of others tampering

with it.  Id.

    2.   Whether the edited transcript of the Harris Tape is
       admissible for the purposes of summary judgment.

By attaching the edited transcript of the Harris Tape to her

response to Defendant's Motion To Strike along with an affidavit

certifying its accuracy, Plaintiff fulfilled several of the

requirements under the Starks analysis that were absent in her

response to the Motion For Summary Judgment.  Defendant argues

that the edited transcript should still be stricken due to the

poor quality of the tapes and the fact that Plaintiff has offered

no proof with regard to the ability of the recording device to

accurately record the conversation.  However, partial

unintelligibility does not render a tape recording inadmissible

unless the unintelligible portions are so substantial as to

render untrustworthy the recording as a whole.  5 Jack B.

Weinstein, Weinstein's Federal Evidence ¶901.05[3] (2d ed. 2007).

In the instant case, the Court cannot determine the

trustworthiness of the edited transcript or the substantiality of

the unintelligible portions of the recording for the purposes of

the Motion For Summary Judgment because the Court does not

possess the original tape recording.

Plaintiff acknowledges that the edited transcript of the

Harris Tape is untimely and requests that the Court allow her to

supplement the unedited transcript to include her edits.  In such

circumstances, the Court has discretion to allow the plaintiff

additional time to certify the transcript.  See Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157, 162 (7th Cir. 1963) (granting plaintiff's first request for an extension of time to obtain certification, but denying plaintiff's second request for an extension).  At this juncture, the Court concludes that Defendant would be unduly prejudiced by allowing Plaintiff to admit the edited transcript into the record as evidence because Defendant has not had an opportunity to review the edits as agreed upon by the parties.  (D.I. 104, Ex. 10)

The Court concludes that both the unedited and the edited transcripts of the Harris Tape must be stricken because Plaintiff failed to verify the unedited transcript, and Plaintiff's edits and affidavit with regard to the edited transcript were untimely, causing undue prejudice to Defendant.

B.    Motion For Summary Judgment

To prove a prima facie case of discrimination under Title VII of the Civil Rights Act of 1964, a plaintiff must prove: 1) she is a member of a protected class; 2) she is qualified for the job; and 3) non-members of the protected class were treated more favorably. Ezold v. Wolf, Block Schorr & Solic-Cohen, 983 F.2d 509, 522 (3d. Cir. 1992).  Construing the evidence in the light most favorable to Plaintiff, the Court concludes that there are genuine issues of material fact disputed by the parties.  Namely, as Plaintiff has noted, there are questions about the impact of

Harris' alleged behavior on Plaintiff, Defendant's liability exposure in light of Plaintiff's allegations, the reasonableness of Plaintiff's delay in reporting Harris' alleged behavior, and whether Plaintiff resigned from or was terminated by Defendant. In sum, the Court concludes that summary judgment is not appropriate on the record presented.  Accordingly, the Court will deny Defendant's Motion For Summary Judgment with respect to all of Plaintiff's claims. (D.I. 92).

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's Motion to Strike (D.I. 103), and deny Defendant's Motion for Summary Judgment (D.I. 92).  An appropriate Order will be entered.